UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| BELINDA BAKER, STARBORNE PRODUCTIONS, LLC and STARBREACHER ENTERPRISES LLC, | : : | Case No. 1:20-cv-03342-AJN |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **ORAL ARGUMENT** |
| | : | **REQUESTED** |
| BENSALZ PRODUCTIONS LLC and EXCEL SPORTS MANAGEMENT LLC, | : : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------------x

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EXCEL SPORTS MANAGEMENT LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT

---

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Tel:    (212) 655-3500

*Attorneys for Defendant*
*Excel Sports Management LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

I.    PRELIMINARY STATEMENT ............................................................................... 1

II.   ARGUMENT ............................................................................................................ 3

    A.  LEGAL STANDARD FOR MOTION TO DISMISS ...................................... 3

    B.  PLAINTIFFS' CLAIMS AGAINST EXCEL ARE BARRED BY THE APPLICABLE
       STATUTE OF LIMITATIONS ........................................................................ 4

      1.  Plaintiffs' Breach of Contract Claim Against Excel ...................................... 5

      2.  Plaintiffs' Tort Claims against Excel ............................................................ 6

          (a)  Fraud ...................................................................................................... 6

          (b)  Breach of Fiduciary Duty ...................................................................... 7

          (c)  Tortious Interference ............................................................................. 8

    C.  PLAINTIFFS' SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT AS
       AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM .............................. 9

    1.  Failure to Plead Oral Contract .......................................................................... 10

    2.  Plaintiffs' Breach of Oral Contract Claim is Barred by the Statute of Frauds ............... 12

       (a)  Plaintiffs' Breach of Oral Contract Claim is Barred by GOL 5-701(a)(1) ........... 12

       (b)  Plaintiffs' Breach of Oral Contract Claim is Barred by GOL 5-701(a)(10) ......... 13

    D.  PLAINTIFFS' THIRD CAUSE OF ACTION FOR FRAUD
       AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM ...................... 14

      1.  Plaintiffs Have Failed to Plead Fraud with Particularity ............................... 14

      2.  Plaintiffs' Fraud Claim is Duplicative of their Breach of Contract Claim .................. 16

    E.  PLAINTIFFS' FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY
       DUTY AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM .......... 18

F.  PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM ....................... 20

G.  PLAINTIFFS' SIXTH CAUSE OF ACTION FOR CIVIL CONSPIRACY AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM ............................ 22

H.  PLAINTIFFS' EIGHTH CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK CITY GENDER-BASED VIOLENCE ACT AND NEW YORK CITY HUMAN RIGHTS LAWS FAILS TO STATE A CLAIM ........................................... 23

III.  CONCLUSION .............................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

<u>Cases</u>

<u>ABB Indus. Sys., Inc. v. Prime Tech., Inc.</u>,
   120 F.3d 351 (2d Cir.1997) ............................................................................ 5

<u>Acito v. IMCERA Grp., Inc.</u>,
   47 F.3d 47 (2d Cir. 1995) ............................................................................ 15

<u>AIM Intern. Trading, LLC v. Valcucine S.p.A.</u>,
   2003 WL 21203503 (S.D.N.Y. May 22, 2003) ........................................... 21

<u>Ashcroft v. Iqbal</u>,
   556 U.S. 662 (2009) ................................................................................ 3, 22

<u>Auerbach v. Amir</u>,
   2008 WL 479361 (E.D.N.Y. Feb. 19, 2008) ............................................... 16

<u>Balta v. Ayco Co.</u>,
   626 F. Supp. 2d 347 (W.D.N.Y.2009) ........................................................ 19

<u>Barnett v. Countrywide Bank, FSB</u>,
   60 F. Supp. 3d 379 (E.D.N.Y. 2014) ............................................................ 8

<u>Bell Atl. Corp. v. Twombly</u>,
   550 U.S. 544 (2007) ................................................................................ 3, 21

<u>Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.</u>,
   448 F.3d 573 (2d Cir. 2006) ......................................................................... 4

<u>Bonsey v. Kates</u>,
   2013 WL 4494678 (S.D.N.Y. Aug. 21, 2013) ...................................... 13, 14

<u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>,
   98 F.3d 13 (2d Cir. 1996) ........................................................................... 17

<u>Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.</u>,
   208 F. Supp. 3d 494 (E.D.N.Y. Sept. 23, 2016) ........................................ 17

<u>Catskill Dev., L.L.C. v. Park Place Entm't Corp.</u>,
   547 F.3d 115 (2d Cir.2008) ........................................................................ 20

Computech Int'l, Inc. v. Compaq Computer Corp.,
  2002 WL 31398933 (S.D.N.Y. Oct. 24, 2002) ................................................................. 11, 13

Delaney v. Bank of Am. Corp.,
  908 F. Supp. 2d 498 (S.D.N.Y. 2012) ...................................................................... 10-11

Fair Hous. Justice Ctr., Inc. v. JDS Dev. LLC,
  2020 WL 1126556 (S.D.N.Y. Mar. 9, 2020) .................................................................. 4

Finley v. Giacobbe,
  79 F.3d 1285 (2d Cir. 1996) .......................................................................................... 20

G.G. Marck & Assocs., Inc. v. Peng,
  762 F. App'x 303 (6th Cir. 2019) .................................................................................. 5

Great Earth Int'l Franchising Corp. v. Milks Dev.,
  311 F. Supp. 2d 419 (S.D.N.Y. 2004) ......................................................................... 18

Gutkowski v. Steinbrenner,
  680 F. Supp. 2d 602 (S.D.N.Y. 2010) .......................................................................... 5

Hughes v. Twenty-First Century Fox, Inc.,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018) ......................................................................... 25

IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.,
  634 F. App'x 19 (2d Cir. 2015) ..................................................................................... 4

In re Embers 86th Street, Inc.,
  184 B.R. 892 (Bankr. S.D.N.Y.1995) .......................................................................... 15

Kat House Prods., LLC v. Paul, Hastings, Janofsky Walker, LLP,
  71 A.D.3d 580 (1st Dep't 2010) .................................................................................... 5

Krys v. Butt,
  486 F. App'x 153 (2d Cir. 2012) .................................................................................. 18

Major League Baseball Properties, Inc. v. Opening Day Prods., Inc.,
  385 F. Supp. 2d 256 (S.D.N.Y. 2005) ...................................................... 11-12, 12 n.7

Malmsteen v. Berdon, LLP,
  369 F. App'x 248 (2d Cir.2010) .................................................................................... 8

Manning v. Utils. Mut. Ins. Co.,
  254 F.3d 387 (2d Cir. 2001) ......................................................................................... 17

Maricultura Del Norte v. World Bus. Capital, Inc.,
  159 F. Supp. 3d 368 (S.D.N.Y. 2015) ................................................................... 17, 18

Marriot Int'l, Inc. v. Downtown Athletic Club of N.Y.C.,
    2003 WL 21314056 (S.D.N.Y. June 9, 2003) ........................................................ 18

Martinez v. Aycock-,
    164 F. Supp. 3d 502 (S.D.N.Y. 2016) .................................................................. 3

Maxim Grp. LLC v. Life Partners Holdings, Inc.,
    690 F. Supp. 2d 293 (S.D.N.Y. 2010) ................................................................ 16

Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.,
    852 F. Supp. 2d 925 (S.D. Ohio 2012) ............................................................... 9

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993) ............................................................................... 15

Minnie Rose LLC v. Yu,
    169 F. Supp. 3d 504 (S.D.N.Y. 2016) ................................................................ 16

Murray v. Xerox Corp.,
    811 F.2d 118 (2d Cir.1987) ................................................................................ 15

N. Shipping Funds I LLC v. Icon Capital Corp.,
    921 F. Supp. 2d 94 (S.D.N.Y. 2013) ............................................................. 18, 19

Naughright v. Weiss,
    826 F. Supp. 2d 676 (S.D.N.Y. 2011) ............................................................. 7 n.5

Revonate Mfg., LLC v. Acer Am. Corp.,
    2013 WL 342922 (S.D.N.Y. Jan. 18, 2013) ....................................................... 17

Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC,
    192 F. Supp. 3d 348 (S.D.N.Y. 2016) ......................................................... 7 n.5, 15

Schlotthauer v. Sanders,
    153 A.D.2d 731 (2d Dep't 1989) ..................................................................... 9 n.6

Shaftel v. Dadras,
    39 F. Supp. 2d 217 (E.D.N.Y.1999) ................................................................... 12

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ............................................................................... 15

Speedfit LLC v. Woodbury USA, Inc.,
    53 F. Supp. 3d 561 (E.D.N.Y. 2014) ......................................................... 8, 18, 19

Thea v. Kleinhandler,
    807 F.3d 492 (2d Cir. 2015) ............................................................................... 4

Zaro Licensing, Inc. v. Cinmar, Inc.,
  779 F. Supp. 276 (S.D.N.Y.1991) ................................................................. 10

## STATE CASES

### Cases

166 Mamaroneck Ave. Corp. v. 151 East Post Road Corp.,
  78 N.Y.2d 88 (1991) ................................................................................. 11

Alexander & Alexander of N.Y. v. Fritzen,
  68 N.Y.2d 968 (1986) ............................................................................... 23

Beizer v. Hirsch,
  116 A.D.3d 725 (2d Dep't 2014) ................................................................. 6

Blanco v. Polanco,
  116 A.D.3d 892 (2d Dep't 2016) ............................................................... 23

Bossey v. Al Castrucci, Inc.,
  105 Ohio App. 3d 666, 664 N.E.2d 1301 (1995) ......................................... 6

Canzona v. Atanasio,
  118 A.D.3d 841 (2d Dep't 2014) ............................................................... 10

Carmon v. Soleh Boneh Ltd.,
  206 A.D.2d 450 (2d Dep't 1994) ............................................................... 12

Carvel Corp. v. Noonan,
  785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004) ....................................... 22 n.11

Cordero v. Epstein,
  22 Misc. 3d 161 (Sup. Ct., N.Y. Co. 2008) ....................................... 25 n.13

Cundall v. U.S. Bank,
  122 Ohio St.3d 188, 909 N.E.2d 1244 (Ohio 2009) ..................................... 8

D & N Boening, Inc. v. Kirsch Beverages, Inc.,
  63 N.Y.2d 449 (1984) ............................................................................... 12

Dee v. Rakower,
  112 A.D.3d 204 (2d Dep't 2013) ............................................................... 10

Dorfman v. Reffkin,
  144 A.D.3d 10 (1st Dep't 2016) ................................................................. 14

Faulkner v. City of Yonkers,
105 A.D.3d 899 (2d Dep't 2013) ............................................................ 23

Freedman v. Chem. Const. Corp.,
43 N.Y. 260 (1977) ............................................................................. 14

Global Fin. Corp. v. Triarc Corp.,
93 N.Y.2d 525 (1999) ............................................................................ 4

Gottwald v. Sebert,
2016 WL 1365969 (Sup. Ct., N.Y. Co. Apr. 6, 2016) ............................ 25

Inv'rs REIT One v. Jacobs,
46 Ohio St. 3d 176, 546 N.E.2d 206 (1989) ........................................... 6

Kat House Prods., LLC v. Paul, Hastings, Janofsky Walker, LLP,
71 A.D.3d 580 (1st Dep't 2010) ............................................................. 5

Loren v. Church Street Apartment Corp.,
148 A.D.3d 516 (1st Dep't 2017) ...................................................... 9 n.6

Mandarin Trading Ltd. v. Wildenstein,
16 N.Y.3d 173 (2011) ......................................................................... 10

Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp.,
93 N.Y.2d 584 (1999) ......................................................................... 10

McCollester v. Chisholm,
104 A.D.2d 361 (2d Dep't 1984) ......................................................... 13

Meyercord v. Curry,
38 A.D.3d 315 (1st Dep't 2007) .......................................................... 16

Norex Petroleum Ltd., v. Blavatnik,
23 N.Y.3d 665 (2014) ........................................................................... 4

Perez v. Lopez,
97 A.D.3d 558 (2d Dep't 2012) ........................................................... 23

Saul v. Cahan,
153 A.D.3d 947 (2d Dep't 2017) ......................................................... 10

Schlotthauer v. Sanders,
153 A.D.2d 731 (2d Dep't 1989) ...................................................... 9 n.6

Tablack v. Wellman,
2006-Ohio-4688 (Ohio Ct. App. 2006) ............................................. 8, 11

Thome v. Alexander & Louisa Calder Foundation,
    70 A.D.3d 88 (1st Dep't 2009)..................................................................... 9

Vilsack v. Meyer,
    96 A.D.3d 827 (2d Dept. 2012) ................................................................... 6

Water St. Leasehold LLC v. Deloitte and Touche LLP,
    19 A.D.3d 183 (1st Dep't 2005).................................................................. 16

**Statutes**

N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney)..............................................2, 12-13

N.Y. Gen. Oblig. Law § 5-701(a)(10) (McKinney)............................................2, 13-14

NYC Admin. Code § 10-11 ................................................................................ 24

Ohio Rev. Code Ann. § 2305.07 (West) ............................................................. 5

Ohio Rev. Code Ann. § 2305.09(C) (West).......................................................... 6

Ohio Rev. Code Ann. § 2305.09(D) (West) ...................................................... 8, 9

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................. 2, 4, 15, 16

Fed. R. Civ. P. 12(b)(6)................................................................................ 1, 3, 4

N.Y. C.P.L.R. 202 (McKinney) ............................................................................. 4

N.Y. C.P.L.R. 213(2) (McKinney) .................................................................... 5, 8

N.Y. C.P.L.R. 213(8) (McKinney) ........................................................................ 6

N.Y. C.P.L.R. 214(4) (McKinney) ........................................................................ 8

N.Y. C.P.L.R. 215(3) (McKinney) ............................................................... 25 n.13

**Other Authorities**

New York City Admin. Code § 8-101 .................................................................. 23

New York City Admin. Code § 8-109 .................................................................. 23

New York City Admin. Code § 10-1104 ............................................................. 24

New York City Admin. Code § 10-1105 ............................................................................. 25 n.13

Defendant Excel Sports Management LLC ("Excel") respectfully moves this Court to dismiss all counts of the "Complaint for Damages and Declaratory Relief and Jury Demand" (the "FAC")[1] as filed against it by Plaintiffs Belinda Baker ("Baker"), Starborne Productions, LLC ("Starborne") and Starbreacher Enterprises LLC ("Starbreacher," and together with Baker and Starborne, the "Plaintiffs"), pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted and the expiration of the applicable statutes of limitations on Plaintiffs' claims, and for all such other and further relief as the Court may deem just and proper.

## I.   PRELIMINARY STATEMENT[2]

Plaintiff Baker is the creator of "Finney the Starbreacher" and the related intellectual property associated with that character.   Plaintiffs Starborne and Starbreacher are Baker's "umbrella companies."   Through the instant action, Plaintiffs claim that, after they entered into a written contract with co-defendant BenSalz Productions, Inc. ("BenSalz," and together with Excel, the "Defendants"), to act as co-producers and partners with Baker in connection with the sale, financing and/or production of an animated feature film project for "Finney the Starbreacher" (the "Finney Project"), BenSalz introduced Plaintiffs to Excel, and that at that introductory meeting, an alleged oral agreement was formed for Excel to act as Plaintiffs' agent in connection with the Finney Project.   Plaintiffs go on to allege that the Defendants breached their separate contracts with Plaintiffs by not performing as promised, and as a result Plaintiffs were damaged by millions of dollars.[3]   Plaintiffs supplement their claims against Excel by including claims of fraud (Count

---

[1]      Plaintiffs' FAC was filed on December 20, 2018 (Dkt. No. 2), following the filing of the initial complaint in this matter on November 5, 2018 (Dkt. No. 1).

[2]      For the sake of this motion only, unless otherwise stated, the allegations in the FAC are presented without disputing their veracity; however, defendant Excel does not concede the truth of any such allegations and reserves all rights in that regard.

[3]      Plaintiffs' breach of contract claim against Excel is contained within Count Two of the FAC.

Three), breach of fiduciary duty (Count Four); civil conspiracy (Count Six); and tortious interference (Count Seven).[4]

Plaintiffs' claims are time-barred.  The FAC describes conduct that occurred from late 2011 through October 2012.  Plaintiffs filed suit on November 5, 2018, more than six years later.  All of the potentially applicable statutes of limitations ran before the lawsuit was filed.  See infra at 4-9.  Each claim should be dismissed on that basis.

Should the Court nevertheless decide to reach the substance of the claims, it will find that each claim is insufficiently pled.  Plaintiffs' breach of oral contract claim against Excel should be dismissed (i) for failing to plead the existence of a material term (see infra at 10-12; and (ii) as barred by the Statute of Frauds.  N.Y. General Obligations Law, § 5–701(a)(1) and (10) (see infra at 12-14).

Plaintiffs' fraud claim lacks the particularity required for such a claim under FRCP 9(b), and merely duplicates the breach of contract claim.  See infra at 14-18.  Also, Plaintiffs have failed to allege damages separate and apart from their alleged breach of contract damages.  Id.

Plaintiffs' breach of fiduciary duty claim is similarly duplicative of their breach of contract claim and thus is defective.  See infra at 18-19.

Plaintiffs' tortious interference claim is inadequately pled.  It simply provides a formulaic recitation of a cause of action's elements and fails to provide the basic details necessary to give Excel proper notice of the contracts and relationships it is alleged to have interfered with and the manner that it allegedly interfered with those contracts and relationships.  See infra at 20-22.

---

[4]        Count One (breach of contract) and Count Five (intentional infliction of emotional harm) are only asserted against defendant Bensalz and will not be addressed herein.  It is unclear whether Count Eight (violations of New York City Gender-Based Violence Act and New York City Human Rights Laws) is directed against defendant Excel; to the extent that it is, it is addressed infra at 23-25.

Plaintiffs' civil conspiracy claim must be dismissed because it is not an independent tort claim.  See infra at 22-23.  Since no such underlying tort claim exists, Plaintiffs' civil conspiracy claim must be dismissed as well.  Id.

It is unclear if Plaintiffs' claim for "violations of New York City Gender-Based Violence Act and the New York City Human Rights Laws (NYCHRL)" is pled against Excel.  Excel addresses it in an abundance of caution.  This claim must be dismissed because it does not give Defendants notice of the specific New York City law that allegedly was violated.  See infra at 23-25.  Moreover, it should be dismissed because Excel is not the "individual" who Plaintiffs' claim perpetrated the alleged acts supporting this claim.  Id.  Further, this claim fails to plead more than conclusory allegations of gender-motivated animus towards women.  Id.

Finally, Plaintiffs Starborne and Starbreacher are limited liability companies.  They cannot appear pro se.  Thus, those entities are not proper parties.  Rowland v. California Men's Colony, 506 U.S. 194, 201–202 (1993).

For all these reasons, the Court should dismiss the FAC against Excel.

## II.   ARGUMENT

## A.   LEGAL STANDARD FOR MOTION TO DISMISS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: a short and plain statement of the claim showing the pleader is entitled to relief.  Martinez v. Aycock-W., 164 F. Supp. 3d 502 (S.D.N.Y. 2016).  The plaintiff has an obligation to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Plaintiffs are required to allege some specific factual bases for those conclusions or face dismissal of their claims.  Id; see also Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).

Based on the legal standards set forth herein, Plaintiffs' FAC as against Defendant Excel must be dismissed as a matter of law.

## B.   PLAINTIFFS' CLAIMS AGAINST EXCEL ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Plaintiffs' claims against Excel are time-barred.   A court may consider a statute of limitations defense on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if the defense appears on the face of the complaint.   Fair Housing Justice Center, Inc. v. JDS Dev. LLC, 2020 WL 1126556, *2 (S.D.N.Y. 2020), citing Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015).

A federal court sitting in diversity, as herein, applies the choice of law rules of the forum state to determine which statute of limitations applies.   Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc., 448 F.3d 573 (2d Cir. 2006).   New York choice of law rules, therefore, apply herein. Under New York's "borrowing statute," when a non-resident sues in New York on a cause of action accruing outside New York, the applicable statute of limitations is the shorter of (1) New York's limitations period, or (2) the limitations period of the state where the claim accrued. CPLR §202; IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc., 634 F. App'x 19 (2d Cir. 2015). Moreover, if a court determines the cause of action accrued in another state and borrows a shorter limitations period from that state, it should also borrow that state's rules for accrual and tolling.   Norex Petroleum Ltd., v. Blavatnik, 23 N.Y.3d 665 (2014).   This rule prevents non-residents from forum shopping in New York for a favorable statute of limitations.   Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525 (1999).

Plaintiffs herein are undisputedly residents of Ohio, and their purported causes of action against defendant Excel accrued in Ohio.  A cause of action accrues at the time and place where plaintiff first had the right to bring the cause of action. Id.; Thea, 807 F.3d 492.  Where an alleged

"injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Id. at 498.  Plaintiffs' claims herein are those of pure economic injury, and therefore accrued in Ohio, where the plaintiffs reside and allegedly sustained an economic loss.  Kat House Prods., LLC v. Paul, Hastings, Janofsky Walker, LLP, 71 A.D.3d 580 (1st Dep't 2010).

1.      **Plaintiffs' Breach of Contract Claim Against Excel**

Plaintiffs' second cause of action attempts to set forth two distinct breach of contract claims – one against defendant BenSalz based on an alleged written agreement dated December 2, 2011, and one against Excel based on a purported oral agreement reached at a meeting in New York City on December 20, 2011.  (FAC ¶'s 105-106).  As discussed infra, while Plaintiff's breach of contract claim as against Excel should be dismissed for several compelling reasons (i.e., statute of frauds, failure to plead with specificity/definiteness), the Court need not even address those issues due to the expiration of the applicable statute of limitations on this claim.

Under both Ohio and New York law the statute of limitations on a claim for breach of an oral agreement (Count Two against Excel) is six years and accrues upon breach.  Ohio Rev. Code §2305.07; G.G. Marck & Assoc., Inc. v. Peng, 762 F. App'x 303, 308 (6th Cir. 2019); CPLR § 213(2); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 360 (2d Cir.1997); Gutkowski v. Steinbrenner, 680 F. Supp.2d 602, 615 (S.D.N.Y. 2010).

Plaintiffs filed their suit on November 5, 2018, so they have to allege that Excel breached the purported contract after November 5, 2012.  But according to the FAC, any alleged breach occurred prior to November 5, 2012.

Plaintiffs claim that Excel breached their purported contract by (i) failing to help package and present the Finney Project to potential buyers, financiers and talent; (ii) failing to handle

Plaintiffs' IP with care; and (iii) failing to competently and aggressively represent Plaintiff Baker. (FAC ¶ 112).  According to the FAC, all of these "failures" occurred before November 5, 2012. (See generally FAC ¶¶ 39-59).  Plaintiffs allege that "by October 2012 things had really fallen apart between Ms. Baker and the Defendants," and that at that time Defendants were "exposed as liars." (FAC ¶ 60, 64).  Thus, both Ohio's and New York's six-year statute of limitations bars Plaintiffs' breach of contract claim.

### 2.   **Plaintiffs' Tort Claims against Excel**

### (a)   **Fraud**

Plaintiffs' third cause of action attempts to set forth a fraud claim as against Excel and defendant BenSalz.  (FAC ¶'s 115-132).  The statute of limitations in Ohio for a fraud claim is four years. R.C. 2305.09(C).  The limitations period begins to run when the claimant discovered or, in the exercise of reasonable care, should have discovered the fraud.  Bossey v. Al Castrucci, Inc., 105 Ohio App. 3d 666, 669, 664 N.E.2d 1301, 1302–03 (1995), citing Inv'rs REIT One v. Jacobs, 46 Ohio St. 3d 176, 179, 546 N.E.2d 206, 209 (1989).

New York's statute of limitations for a fraud claim is the longer of six years from the date on which the fraud occurred, or two years from discovery or the time when the plaintiff should have, with reasonable diligence, discovered the fraud.  See CPLR § 213(8).  See also Beizer v. Hirsch, 116 A.D.3d 725, 725 (2d Dep't 2014), citing Vilsack v. Meyer, 96 A.D.3d 827, 828 (2d Dep't 2012).

Plaintiffs make the following claims of fraud as against Excel:

- in June 2012 "[d]efendants misrepresented to Ms. Baker multiple times that a more formal talent agent and partnership agreement with Excel" was forthcoming. (FAC ¶ 34-35, 120);

- in June 2012 "[d]efendants misrepresented that they were following up with Steven Spielberg, Dreamworks and Disney" on the Finney project.  (FAC ¶ 39, 50, 121);

- in October 2012 "[d]efendants misrepresented to Plaintiffs that" Mr. Berman of Village Road Show had read Ms. Baker's script and wanted to speak with Excel about next steps.  (FAC ¶ 51, 122);
- in June 2012 "[d]efendants misrepresented that a call between Close and Berman to discuss Village Road Show's interest" in the Finney project was going to take place soon.  (FAC ¶ 50, 124);
- in August 2012 "[d]efendants misrepresented to Baker that several strategy calls had been made by Casey Close to George Johnsen."  (FAC ¶'s 54, 125);
- in June 2012 "[d]efendants misrepresented that Baker's extensive presentation and promotional partnership proposal created specifically for Animal Planet-Discovery Kids" would be forwarded to top network executives.  (FAC ¶'s 43, 126);
- in May 2012 "[d]efendants also lied about" distributing Plaintiffs' pitch packages to private investors, hedge funds, Wall Street investors, celebrities and other contacts.  (FAC ¶ 39, 127); and
- in July 2012 defendants misrepresented that Casey Close had been in contact with Arc Communication and Jeff Young regarding the Finney project.  (FAC ¶ 55, 128).

Each of the above-cited allegations of misrepresentation by "defendants"[5] was allegedly made prior to November of 2012.  Thus, under Ohio's four-year statute of limitations, plaintiffs' fraud claims are statute-barred.  Plaintiffs' fraud claims are similarly statute-barred under New York's longer six-year statute of limitations.  Plaintiffs allege in their complaint that, by October of 2012 at the latest, "things had really fallen apart between Ms. Baker and the Defendants," and that defendants had "been exposed as liars."  (FAC ¶'s 60, 64).  Thus, the alleged misrepresentations were made and were discoverable more than six years before November 5, 2018, when the complaint was filed.  Plaintiffs' fraud claim should be dismissed in its entirety.

**(b)** **Breach of Fiduciary Duty**

---

[5]    When a complaint alleges fraud against multiple defendants, Rule 9 (b) "requires that a plaintiff differentiate the allegations as to each defendant." Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC, 192 F. Supp. 3d 348, 355 (S.D.N.Y. 2016), citing Naughright v. Weiss, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011).  Plaintiffs, for the most part, fail to differentiate between the Defendants throughout the FAC.

Similarly, Plaintiffs' breach of fiduciary duty claim is time-barred under both New York and Ohio law.

A breach of fiduciary duty claim under Ohio law is governed by Ohio Rev. Code § 2305.09(D), which provides for a four-year statute of limitation period.  See Cundall v. U.S. Bank, 122 Ohio St.3d 188, 193, 909 N.E.2d 1244, 1249 (Ohio 2009).  A plaintiff's cause of action for breach of fiduciary duty accrues when the act or commission constituting the breach of duty occurs unless it could not have been discovered with due diligence.  Id.  See also Tablack v. Wellman, 2006-Ohio-4688, ¶ 95 (Ohio Ct. App. 2006).

 In New York, "[t]he statute of limitations for a breach of fiduciary duty claim sounding in tort is three years when money damages are sought, but the statute of limitations for a breach of fiduciary duty claim sounding in contract is six years." Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014), citing Speedfit LLC v. Woodbury USA, Inc., 53 F. Supp. 3d 561, 582 (E.D.N.Y. 2014) (citing CPLR § 213(2)).  A claim for breach of fiduciary duty generally accrues at the time of breach.  Id., citing Malmsteen v. Berdon, LLP, 369 F. App'x 248, 249–50 (2d Cir.2010).

Plaintiffs plead that by October 2012 at the latest, "things had really fallen apart between Ms. Baker and the Defendants."  (FAC ¶ 60).  Plaintiffs go even further when they allege that "Ms. Baker and the Defendants' working relationship ended in Nov. 2012…."  (FAC ¶ 81).  Since all of Plaintiffs' allegations of breach of fiduciary duty occurred in the months leading up to late October/November 2012 when the parties working relationship admittedly "ended" (see generally FAC ¶¶ 133-155), Plaintiffs' breach of fiduciary duty claims are time-barred under either Ohio's four-year statute of limitations or New York's six year statute of limitations..

**(c)**     **Tortious Interference**

8

The statute of limitations for a tortious interference claim under New York law is 3 years from the occurrence of the act constituting the alleged interference.  See CPLR 214(4); Thome v. Alexander & Louisa Calder Foundation, 70 A.D.3d 88, 108 (1st Dep't 2009).  Under Ohio law, the statute of limitations for tortious interference is four years from the occurrence of the event giving rise to the claim.  See R.C. 2305.09(D); Miami Valley Mobile Health Servs., Inc. v. ExamOne WorldWide, Inc., 852 F. Supp. 2d 925, 934-35 (S.D. Ohio 2012).

Plaintiffs' tortious interference claim fails to adequately plead the timing of Excel's purported interference with Plaintiffs' contracts and relations.  It, at most, suggests that certain individuals and entities withdrew their "efforts, offers, and participation" in the Plaintiffs' project "after April 2017."  But it does not plausibly plead any conduct by Excel within the statute of limitations period, instead vaguely alleging that Excel had interfered with unspecified contracts and business relations.  (See FAC ¶¶ 143-45).  Additionally, to the extent that such claim is premised on actions purported to have taken place in 2011 and 2012, they are clearly statute-barred here under either New York or Ohio law.  Thus, Plaintiffs' tortious interference claims are barred by the applicable statute of limitations and should be dismissed.[6]

## C.   PLAINTIFFS' SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM

Plaintiffs second cause of action for "breach of contract" is really two separate claims – one for breach of a written contract between Plaintiffs and defendant BenSalz regarding BenSalz's services as "Co Executive Producer" (FAC ¶ 105 and Exh. B), and one for breach of an alleged oral agreement for defendant Excel to act as Plaintiff Baker's agent for the Finney project.  (FAC

---

[6]      Since the statute of limitations for a civil conspiracy claim is the same as the underlying cause of action, "such action is time-barred when the substantive tort underlying it is time-barred." Loren v. Church Street Apartment Corp., 148 A.D.3d 516, 517 (1st Dep't 2017), citing Schlotthauer v. Sanders, 153 A.D.2d 731 (2d Dep't 1989).  Thus, Plaintiffs' civil conspiracy is time-barred here as well.

¶ 106).  The instant motion is addressed to that portion of this claim alleging breach of contract as against Excel.  If the Court decides that the breach of contract claim is not barred by the statute of limitations, it should dismiss the claim on the merits.

### 1.    Failure to Plead Oral Contract

The essential elements of a breach of contract cause of action are "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."  Canzona v. Atanasio, 118 A.D.3d 841, 842-43 (2d Dep't 2014), quoting Dee v. Rakower, 112 A.D.3d 204, 208-209 (2d Dep't 2013).  "A party alleging a breach of contract must demonstrate the existence of a … contract reflecting the terms and conditions of their … purported agreement."  Saul v. Cahan, 153 A.D.3d 947, 950 (2d Dep't 2017), citing Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 181-182 (2011).  "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  Cahan, 153 A.D.3d at 950, citing Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp., 93 N.Y.2d 584, 589 (1999).

A claim for breach of contract, "must, at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion."  Zaro Licensing, Inc. v. Cinmar, Inc., 779 F. Supp. 276, 286 (S.D.N.Y.1991).  Allegations of oral contract that are too vague and indefinite are insufficient.  Mandarin Trading Ltd., 16 N.Y.3d at 182.

A plaintiff alleging the existence of an oral agreement "faces a heavier burden: To ensure that parties are not trapped into surprise contractual obligations that they never intended, more than agreement on each detail is required, there must be an overall agreement to enter into the binding

contract." Delaney v. Bank of Am. Corp., 908 F. Supp. 2d 498, 514 (S.D.N.Y. 2012), aff'd, 766 F.3d 163 (2d Cir. 2014) (citations omitted).  Further, pursuant to the "doctrine of definiteness or certainty" established in contract law, "a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to.... If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract."  Computech Int'l, Inc. v. Compaq Computer Corp., 2002 WL 31398933, at *2 (S.D.N.Y. Oct. 24, 2002), quoting 166 Mamaroneck Ave. Corp. v. 151 East Post Road Corp., 78 N.Y.2d 88, 91 (1991).

Here, Plaintiffs contend that "the establishment of the contract between Ms. Baker and Excel to serve and represent her as agent and fiduciary was mutually agreed and affirmed during the parties NYC meeting and by their subsequent actions…." (FAC ¶ 106), and that Excel breached the alleged oral agency contract by failing "to follow through on their promises and duties as her agent to help package and present her project to any and all potential buyers, financiers and talent…." (Id. at ¶ 112).  However, Plaintiffs also contradictorily allege that plaintiff Baker and Excel had never agreed on the amount of compensation to be paid to Excel for its work as her agent.  (Id. at ¶ 34) ("… when Baker pressed for more specifics, especially pertaining to Mr. Close/Excel's expected compensation … she was told that a document with those specifics was 'on the way'").  Plaintiffs do not allege that they ever received such a document from Excel or that its compensation was agreed to at any time.  Plaintiffs acknowledge that "it was important for [them] to obtain clarity in regards to Casey/Excel's fees and expectations," yet fail to allege whether the parties reached agreement on this essential term of their purported agreement.  (Id. at ¶ 35).

Price or compensation are material terms of an agreement and require definiteness.  Major League Baseball Properties, Inc. v. Opening Day Prods., Inc., 385 F. Supp. 2d 256, 271 (S.D.N.Y.

2005).   Where an alleged agreement contains open terms such as here, "there is a strong presumption against finding a binding and enforceable obligation."  Carmon v. Soleh Boneh Ltd., 206 A.D.2d 450, 450 (2d Dep't 1994).  Thus, the parties' failure to reach agreement on the amount of compensation to be paid to Excel, a material term to the purported oral agreement alleged herein, warrants dismissal of this claim as against Excel.[7], [8]

**2.      Plaintiffs' Breach of Oral Contract Claim is Barred by the Statute of Frauds**

In addition to failing to plead all of the material terms of the purported oral agreement between Plaintiffs and Excel, Plaintiffs' breach of contract claim as against Excel is barred by the Statute of Frauds.  The Statute of Frauds was "intended to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury ..." D & N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 453, (1984), and to "ensure the existence of a valid agreement...." Shaftel v. Dadras, 39 F. Supp. 2d 217, 228 (E.D.N.Y. 1999).  As explained below, enforcement of the alleged oral agreement between plaintiff Baker and defendant Excel is precisely the type of situation that the Statute of Frauds was intended to prevent, and the alleged agreement is barred by two separate sections of the New York General Obligations Law ("GOL").

**(a)      Plaintiffs' Breach of Oral Contract Claim is Barred by GOL 5-701(a)(1)**

Under the Statute of Frauds, an agreement that by its terms cannot be performed within one year of its creation is void unless it is in writing.  GOL § 5–701(a)(1) (McKinney 1993). Under New York law, contracts of indefinite duration are deemed to be incapable of being performed

---

[7]      Plaintiffs' allegation that they were informed that a document stating the compensation to be paid Excel "was on the way" (FAC ¶ 35) is also insufficient to state a claim for breach of oral contract, as "a future agreement to agree on compensation is too indefinite for enforcement."  Opening Day Productions, Inc., 385 F. Supp. 2d at 271.

[8]      Plaintiffs also fail to specify which of them entered into the alleged oral agreement with Excel, alternatively stating that it was "Plaintiffs" that had entered into such agreement (FAC ¶ 105) and thereafter alleging it was Plaintiff Baker alone (FAC ¶ 106).

within a year, and thus fall within the ambit of the Statute of Frauds.  Computech Int'l, Inc., 2002 WL 31398933, at *3.

Plaintiffs allege that Baker and Excel entered into an agreement at a meeting on December 20, 2011 for Excel to act as Baker's agent with respect to the Finney Project.  (FAC ¶ 106).  While Plaintiffs allege that the understanding was that Excel was to be paid for its efforts (Id. at ¶ 34), Plaintiffs do not allege what the term of this purported agreement may be, and apparently believed that it was to go on *ad infinitum*.  However, "[a] service contract of indefinite duration, in which one party agrees to procure customers, or accounts, or orders on behalf of the second party, is not by its terms performable within a year − and hence must be in writing and signed by the party to be charged − since performance is dependent, not upon the will of the parties to the contract, but on that of a third party."  McCollester v. Chisholm, 104 A.D.2d 361, 361-362 (2d Dep't 1984), *aff'd*, 65 N.Y.2d 891 (N.Y. 1985), citing GOL § 5–701(a)(1).  See also Bonsey v. Kates, 2013 WL 4494678, *7 (S.D.N.Y. Aug. 21, 2013).

Here, Plaintiffs allege that Baker's agreement with Excel was based on the understanding that Excel "would endeavor to use their alleged extensive connections to help package Ms. Baker's project and get it financed, sold and produced in exchange for a substantial financial interest in the project."  (FAC ¶ 34).  Thus, a necessary component of the alleged agreement was that Excel's "extensive connections" would help get the project sold, financed and produced.  However, since performance of the purported contract is dependent on Excel's purported contacts agreeing to participate in the project, it is incapable of being performed within one year and is void under the statute of frauds.

**(b)** **Plaintiffs' Breach of Oral Contract Claim is Barred by GOL 5-701(a)(10)**

Plaintiffs' breach of oral contract claim against Excel is also barred by GOL § 5-701(a)(10), which provides that an agreement that is not in writing is void where it

> "10.  Is a contract to pay compensation for services rendered in ... *negotiating* the purchase ... of any real estate or interest therein, or of *a business opportunity,* business, its good will, inventory, fixtures or an interest therein...." (Emphases added.)

GOL § 5-701(a)(10) goes on to add that "'[n]egotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction."  <u>Id</u>. <u>See</u> <u>Dorfman v. Reffkin</u>, 144 A.D.3d 10, 16-17 (1st Dep't 2016) (discussing the applicability of GOL § 5-701(a)(10) and stating that its "sweep is comprehensive…").

Here, Plaintiffs are alleging that an agreement was reached whereby Excel would act as agent for Baker – to apprise her of "business opportunities" by procuring introductions to Excel's contacts in the entertainment industry.  <u>See</u> <u>Freedman v. Chem. Const. Corp.</u>, 43 N.Y.2d 260, 267 (1977) (stating that the term "business opportunities," as used in the statute, includes situations where "the intermediary's activity is so evidently that of providing "know-how" or "know-who," in bringing about between principals an enterprise of some complexity…").  Thus, since Plaintiffs have pointed to no writing subscribed to by Excel agreeing to the terms of this purported agreement, GOL § 5-701(a)(10) renders such agreement void and, therefore, Plaintiffs' second cause of action for breach of contract as against Excel must be dismissed.

**D.     PLAINTIFFS' THIRD CAUSE OF ACTION FOR FRAUD
AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM**

**1.     <u>Plaintiffs Have Failed to Plead Fraud with Particularity</u>**

The elements necessary to sustain a claim of fraud under New York law are: (1) a misrepresentation of an existing material fact; (2) knowingly or recklessly made by one party to another; (3) with the intent to deceive, or scienter; (4) which misrepresentation is justifiably relied

upon; (5) to the detriment of the party relying on it.  Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir.1987); In re Embers 86th Street, Inc., 184 B.R. 892, 898 (Bankr. S.D.N.Y.1995).

Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To comply with this heightened pleading standard, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  The Second Circuit has advised that courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement" with respect to allegations of scienter "for a license to base claims of fraud on speculation and conclusory allegations." Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995) (citation and quotation marks omitted).  Rather, a plaintiff must allege "facts that give rise to a strong inference of fraudulent intent," and may do so either by alleging facts showing that defendant had both "motive and opportunity to commit fraud," or by alleging facts "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiffs' allegations of fraud (as set forth in ¶'s 120-128 of the FAC) do not meet these heightened pleading requirements.  Plaintiffs' allegations repeatedly fail to differentiate between the Defendants as to who allegedly made the alleged misrepresentation.  See Royal Host Realty, LLC, 192 F. Supp. 3d at 355.  See also FAC ¶'s 120-128.  When an allegation does specifically identify the person who allegedly made a misrepresentation, that person was not a representative of defendant Excel.  See, e.g., FAC ¶'s 35, 120 (identifying defendant BenSalz's representative Mike Skouras as the person making the alleged misrepresentation); FAC ¶ 39, 121 (same); FAC

¶'s 43, 126 (same); FAC ¶'s 39, 127 (same); FAC ¶'s 55, 128 (Skouras and BenSalz representative Eric Salzman).

Additionally, Plaintiffs do not sufficiently allege justifiable or reasonable reliance. An essential element of a fraud claim is that there must be reasonable reliance on the misrepresentation. Water St. Leasehold LLC v. Deloitte and Touche LLP, 19 A.D.3d 183, 185 (1st Dep't 2005); Meyercord v. Curry, 38 A.D.3d 315, 316 (1st Dep't 2007). While Plaintiffs allege that the Defendants misrepresented that they had sent Baker's script and pitch package to "a plethora" of their clients and contacts (FAC 117), Plaintiffs admit that, during this period, they were not relying on such representations, as they also were presenting their script to other potentially interested parties. (FAC ¶ 61).

Here, Plaintiffs' complaint, including their allegations of fraud, are confusing, repetitive and contradictory and simply do not meet the pleading requirements of Fed.R.Civ.P. 9(b). Thus, Plaintiffs' fraud claims should be dismissed.

**2.    Plaintiffs' Fraud Claim is Duplicative of their Breach of Contract Claim**

A fraud claim, even where sufficiently pled, is not cognizable if it is based on the same facts that underlie a claim for breach of contract. See Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 519 (S.D.N.Y. 2016); Auerbach v. Amir, 2008 WL 479361, at *5 (E.D.N.Y. Feb. 19, 2008). Rather, New York law requires "that a fraud claim, raised in a case that stems from a breach of contract, be sufficiently distinct from the breach of contract claim." Maxim Grp. LLC v. Life Partners Holdings, Inc., 690 F. Supp. 2d 293, 306-07 (S.D.N.Y. 2010) (citation and quotation marks omitted). Hence, a plaintiff seeking to assert a claim for fraud in connection with a breach of contract claim must either "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the

contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).  Fraud claims that do not meet at least one of these criteria are subject to dismissal. See, e.g., Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc., 208 F. Supp. 3d 494, 504 (E.D.N.Y. Sept. 23, 2016) (dismissing plaintiff's fraud claim as "indistinguishable from its claims for breach of contract"); Maricultura Del Norte v. World Bus. Capital, Inc., 159 F. Supp. 3d 368, 377-79 (S.D.N.Y. 2015) (dismissing plaintiff's fraud claim as "duplicative" of its breach of contract claim).  Here, Plaintiffs do not satisfy any of these criteria.

Plaintiffs' fraud claim should be dismissed because it is based upon allegations that defendant Excel breached its alleged oral agreement to act as Plaintiffs' agent in connection with the Finney Project and therefore is duplicative of that portion of the Second Cause of Action alleging that Excel breached its purported oral agreement to act as Plaintiffs' agent.  See e.g. FAC ¶'s 120-128.  The Complaint does not allege that Excel owed Plaintiffs any duty separate and apart from its duty to perform as agent under the purported agreement.  Moreover, there is no allegation that the alleged fraudulent misrepresentations were collateral or extraneous to the agreement. Again, the Complaint alleges that Excel represented that it intended to perform under the agreement by presenting the Finney Project to potential buyers, financiers and talent, but that, according to Plaintiffs, such representations were false because Excel failed to do so.  (FAC ¶ 112).

Additionally, representations like those that form the basis of Plaintiffs' fraud claim, which are merely statements of intent to perform under a contract, cannot constitute fraud.  See Manning v. Utils. Mut. Ins. Co., 254 F.3d 387, 401 (2d Cir. 2001); see also Revonate Mfg., LLC v. Acer Am. Corp., No. 12-cv-6017, 2013 WL 342922, at *3 (S.D.N.Y. Jan. 18, 2013).  Accordingly, courts "have consistently dismissed fraud claims predicated on allegations that defendants did not

intend to meet their contractual obligations." Marriot Int'l, Inc. v. Downtown Athletic Club of N.Y.C., 2003 WL 21314056, at *6 (S.D.N.Y. June 9, 2003).

Lastly, the damages sought under the fraud and breach of contract claims are the same: lost profits. (Id. ¶¶ 118, 138). Plaintiffs do not seek separate damages that are unrecoverable as contract damages. See Maricultra Del Norte, 159 F. Supp. 3d at 378-9 (stating that in order to assert both fraud and contract claims premised on similar facts, the plaintiff must show that the fraud damages are "a special consequence of the fraud and can be separated from" the breach of contract damages), citing Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 430 (S.D.N.Y. 2004). Under such circumstances, Plaintiffs' fraud claim must be dismissed.

## E.   PLAINTIFFS' FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM

To state a cause of action for breach of fiduciary duty in New York, plaintiffs must allege "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." Speedfit LLC, 53 F. Supp. 3d at 581 citing N. Shipping Funds I LLC v. Icon Capital Corp., 921 F. Supp. 2d 94, 101 (S.D.N.Y. 2013). "'A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" N. Shipping Funds I LLC, 921 F. Supp. 2d at 101 (quoting Krys v. Butt, 486 F. App'x 153, 154 (2d Cir. 2012)). In most cases, an arm's-length commercial transaction will not give rise to a fiduciary relationship absent "a higher level of trust." Id.

As stated above with respect to Plaintiffs' fraud claim, under New York law a tort claim such as breach of fiduciary duty cannot duplicate a breach of contract claim in its factual and legal basis. See N. Shipping Funds I LLC, 921 F. Supp. 2d at 105 (dismissing breach of fiduciary duty claim that was "identical in substance" to the breach of contract claim and sought

the same damages as the breach of contract claim).  Thus, "[a] breach of fiduciary duty claim must be dismissed as duplicative of a breach of contract claim if the parties owe each other no duty independent of the contract itself."  Speedfit LLC., 53 F. Supp. 3d at 581.

In order to state a claim for breach of fiduciary duty independent of a claim for breach of contract, the complaint must include "allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone."  Speedfit LLC, 53 F. Supp. 3d at 581, citing N. Shipping Funds I LLC, 921 F. Supp. 2d at 105 (quoting Balta v. Ayco Co., 626 F. Supp. 2d 347, 360–61 (W.D.N.Y.2009)).

Here, each of Plaintiffs' allegations of breach of fiduciary duty arise from the alleged agreement they made with Excel.  In this regard, Plaintiffs allege that Excel breached its fiduciary duty by not (i) getting NDA's from Jeff Bazion and others (FAC ¶'s 138-139, 147); (ii) securing financiers, talent, corporate sponsors or investors as promised (Id. at ¶'s 140, 151); (iii) reaching out to Derek Jeter, Tiger Woods and other sports stars nor securing voice actors as promised (Id. at ¶'s 143, 152); (iv) following through on their promises to pursue literary agents, corporate partners or book publishers. (Id. at ¶ 144); and (v) pursuing leads for funding provided by Baker, including failing to "aggressively work" with George Johnsen to pursue investors. (Id. at ¶'s 149-150).  Each of these alleged breaches of fiduciary duty relate directly to Plaintiffs' allegation that Excel breached its purported agreement to act as Plaintiffs' agent in connection with the Finney Project.  Since none of these alleged breaches of fiduciary duty relate to any duty independent of the alleged agreement itself, Plaintiffs' breach of fiduciary duty claim is duplicative of its breach of contract claim and must be dismissed.[9]

---

[9]       Plaintiffs also allege that Excel breached its fiduciary duty to Plaintiff Baker by failing to prevent defendant BenSalz from allegedly conducting "cruel, abusive and fraudulent behavior" towards her.  (FAC ¶ 138).  Excel has no such fiduciary duty to prevent a third party from allegedly harassing Ms. Baker.

### F.   PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM

To state a claim for tortious interference with business relations, a plaintiff must allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir.2008).

In order to recover for a claim of tortious interference with a contractual relationship a plaintiff must allege "(1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages." Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996).

Plaintiffs' seventh cause of action attempts to set forth claims of both tortious interference with contract and with prospective economic relations against both Excel and BenSalz. (FAC ¶'s 143-145). This cause of action, however, attempts to rely on facts which are alleged nowhere in the main body of the complaint. Other than alleging generally that Defendants "unlawfully and maliciously interfered with Ms. Baker's business contracts and relationships," and that Defendants' "ongoing disparagement, espionage and ongoing legal threats interfered with Plaintiffs' past and prospective contracts" (FAC ¶ 143), Defendants are given no notice of when or what they specifically have done to purportedly interfere with Plaintiffs' contract and business relationships. Plaintiffs do not state what Defendants' said or did that might have disparaged them, what "legal threats" Defendants allegedly made to interfere with Plaintiffs' existing and prospective contracts or describe Defendants' "espionage." See AIM Intern. Trading, LLC v. Valcucine S.p.A., 2003 WL 21203503, *5, 6 (S.D.N.Y. May 22, 2003) (stating that the complaint

must show what contracts were interfered with and how they were breached, or how the defendant interfered with the plaintiff's relationships).   Plaintiffs simply have not properly pled tortious interference here.

Here, Plaintiffs' tortious interference claim simply pleads no more than "a formulaic recitation of a cause of action's elements."  Twombly, 550 U.S. at 545.  Plaintiffs merely allege − "by information and belief" – that Defendants were aware of Plaintiffs' existing and prospective contracts and that they "unlawfully and maliciously interfered" with them causing plaintiff Baker unspecified economic harm.  (FAC ¶ 143).[10]  While Plaintiffs generally refer to the relationships with which Defendants allegedly interfered ("various film studios, production companies, private investors and corporate entities"), the complete lack of specificity as to the identity of these entities, the allegedly tortious actions of Defendants or the timing of such actions give Defendants no reasonable notice of the actions they have allegedly taken.

The most that Plaintiffs allege is that Defendants interfered with "a long standing contract and business relationship with [Acrylic Tank Manufacturing ("ATM")]."  (FAC ¶ 143, p. 54).  But Plaintiffs do not describe the contracts that were allegedly interfered with or how they were interfered with or when, other than to again reference "Defendants' ongoing disparagement, espionage and ongoing legal threats…."  Id.  By not alleging what was said by Defendants that purportedly constitutes disparagement or legal threats, or what actions were taken that allegedly constitutes espionage (or when they were said or taken), Defendants have no way to properly evaluate these claims or the damages they allegedly caused.

---

[10]     After paragraph 155 on page 50 of the FAC, paragraph numbering reverted back to paragraph 136.  Thus, there are two paragraphs 136 through 149.  Paragraph 143, cited above, refers to that paragraph beginning on page 53 and running through the top of page 55.

The second instance of purported tortious interference alleged by Plaintiffs is that Defendants "attempt[ed] to approach Sea World and or other contacts of Ms. Baker with a similar film project and to pitch them on promotions, events and other misappropriated trade secrets." (FAC ¶ 143, pp. 54-55). This allegation, which was also prefaced with the limitation that it was being pled "by information and belief," fares no better. While it alleges that Defendants "attempt[ed]" to approach Sea World and other unidentified contacts of plaintiff Baker, it does not allege that Defendants actually contacted these parties. Further, it does not state when these alleged attempted approaches were made or who made the approaches (other than the general allegation that it was "Defendants").[11]

Simply, Plaintiffs' tortious interference claims do not meet the pleading standards required by the Federal Rules and applicable caselaw, and merely make naked assertions without the necessary factual enhancements that are required. <u>Ashcroft</u>, 556 U.S. at 678 (2009). As such, the Court should dismiss Plaintiffs' seventh cause of action as against defendant Excel in its entirety.

## G. PLAINTIFFS' SIXTH CAUSE OF ACTION FOR CIVIL CONSPIRACY AS AGAINST DEFENDANT EXCEL FAILS TO STATE A CLAIM

A claim for civil conspiracy requires that the plaintiff allege "a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." <u>Faulkner v. City of Yonkers</u>, 105 A.D.3d 899, 900 (2d Dep't 2013), <u>quoting</u> <u>Perez v. Lopez</u>, 97 A.D.3d 558, 560 (2d Dep't 2012). However, New York does not recognize civil conspiracy as an independent cause of action and it cannot be maintained absent an

---

[11]    To the extent Plaintiffs are alleging a tortious interference with business relations claim, plaintiffs have not sufficiently pleaded the third element, wrongful means. To satisfy the third element, Plaintiffs must allege that Defendants committed a "crime or an independent tort," or applied economic pressure "for the sole purpose of inflicting intentional harm on [Plaintiffs]." <u>Carvel Corp. v. Noonan</u>, 785 N.Y.S.2d 359, 818 N.E.2d 1100, 1103 (2004). The FAC does not allege any criminal, tortious or other conduct by defendant Excel within the meaning of <u>Carvel</u> and its progeny.

underlying tort that is actionable without the conspiracy.  See Blanco v. Polanco, 116 A.D.3d 892, 896 (2d Dep't 2016), citing Alexander & Alexander of N.Y. v. Fritzen, 68 N.Y.2d 968, 969 (1986).

Plaintiffs' independent tort claims have either failed to meet the pleading requirements for such claims or are barred by the applicable statute of limitations.  Therefore, since a civil conspiracy claim cannot stand alone where no other independent tort claims are actionable, Plaintiffs' civil conspiracy claim must be dismissed.

**H.   PLAINTIFFS' EIGHTH CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK CITY GENDER-BASED VIOLENCE ACT AND NEW YORK CITY HUMAN RIGHTS LAWS FAILS TO STATE A CLAIM**

Plaintiffs' eighth cause of action attempts to assert a claim for "violations of New York City Gender-Based Violence Act and the New York City Human Rights Laws (NYCHRL)."  FAC ¶'s 146-150 (pp. 55-58).  This claim should be dismissed for several reasons.

First, it is unclear exactly what New York City law Plaintiffs are relying on to support this claim.  Plaintiffs' cite to "'GMVA' N.Y.C. Code § 8-101" as the governing section here.  FAC ¶ 146 (p. 55).  Thus, it appears that Plaintiffs are relying on Title 8, Chapter 1 (Civil Rights; Commission on Human Rights), of the New York City Administrative Code for this claim.  That section of the New York City Administrative Code, however, only permits alleged victims of discriminatory harassment or violence to file a complaint with the New York City Commission on Human Rights to pursue their remedies.  N.Y.C. Code § 8-109.  That section also does not mention the acronym "GMVA" identified by Plaintiffs.  FAC ¶ 146 (p. 55).  That acronym – GMVA – appears to refer to a different chapter of Title 8 of the Administrative Code contained in sections 8-901 through 8-907 thereof and entitled the "Victims of Gender-Motivated Violence Protection

Act."[12]  While Plaintiffs, at the very least, should be required to replead this claim to provide the Defendants with proper notice of the exact statute or law upon which they base this claim, assuming *arguendo* that it is based on the NYC Admin. Code 10-11, et seq., Plaintiffs have failed to properly plead such a claim.

It is also unclear whether this claim is directed against defendant Excel at all.  Plaintiffs' allege that Ms. Baker was sexually harassed and assaulted by Michael Skouras, a representative of defendant BenSalz, beginning in December of 2011 and "throughout 2012."  See FAC ¶ 147-149 (pp. 55-58).  Plaintiffs go on to allege that, "[a]ccording to this particular NYC law, both Mr. Skouras individually and his employer(s) and co venture partners can also be held liable for damages…."  FAC ¶ 149 (p. 58).  Mr. Skouras, however, was not employed by defendant Excel, but by defendant BenSalz.  FAC ¶ 10.  Further, it is unclear whether the allegation that Mr. Skouras' "co venture partners" can be held liable refers to defendant Excel, and thus this claim should be dismissed as against defendant Excel as pleaded.

And even if Plaintiffs were alleging that defendant Excel should be held liable for the claims set forth in this cause of action, this claim should still be dismissed as against defendant Excel.  N.Y.C. Admin. Code section 10-1104 provides that "any person claiming to be injured by an individual who commits a crime of violence motivated by gender has a cause of action against such individual …."  See N.Y.C. Admin. Code §10-1104 (emphasis added).  Since Plaintiffs allege that it is Mr. Skouras, and not defendant Excel, who allegedly committed a crime of violence motivated by gender against plaintiff Baker, Excel is not a proper party to this claim.  Further, since defendant Excel is a limited liability company, and not an "individual," Excel cannot be

---

[12]       To make matters even more complicated, as of October 16, 2018, the "Victims of Gender-Motivated Violence Protection Act" was amended and re-designated as the "Victims of Gender-Motivated Violence Protection Law" in Title 10 (Public Safety), Chapter 11 (Actions by Victims of Gender-Motivated Violence) of the New York City Administrative Code.

liable under this statute.  See Gottwald v. Sebert, 2016 WL 1365969, at *22 (Sup. Ct., N.Y. Co.

Apr. 6, 2016) (holding that only the individual defendant who allegedly committed the crimes, not

his companies, could be liable under this statute "because the statute, on its face, is limited to

violence committed by 'an individual'").[13]

Finally, Plaintiffs' gender-motivated violence claim must be dismissed because it is

improperly pled.  A claim under this statute must allege that (i) the alleged act constitutes a

misdemeanor or felony against plaintiff; (ii) presenting a serious risk of physical injury; (iii) that

was perpetrated because of plaintiff's gender; (iv) in part because of an animus against plaintiff's

gender; and (v) injury.  See Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 455

(S.D.N.Y. 2018).  Here, Plaintiffs' claim fails to properly allege facts demonstrating that Skouras'

alleged acts were motivated, at least in part, by an animus against women – they simply make such

allegations in conclusory fashion.  See FAC ¶ 147 (p. 56) (alleging that Skouras' conduct

evidenced "a severe animosity, lack of respect, objectification of, and contempt for women and

towards Ms. Baker in particular").  Plaintiffs fail to set forth specific facts demonstrating Skouras'

alleged animus towards women.  Under such circumstances, dismissal of this claim is warranted.

See Hughes, 304 F. Supp. 3d at 455 (where plaintiff "offers no specific allegations that defendant

harbored or expressed any animosity toward women" dismissal is warranted).[14]

For all of these reasons, Plaintiffs' eighth cause of action should be dismissed in its entirety

as against defendant Excel.

---

[13]    At least one New York court has found that the seven-year statute of limitations contained in the statute
(NYC Admin. Code § 10-1105) to be violative of the preemption doctrine.  See Cordero v. Epstein, 22 Misc. 3d 161,
168 (Sup. Ct., N.Y. Co. 2008).  According to the court in Cordero, the statute of limitations in New York for sexual
assault is one year (citing N.Y. CPLR 215(3)) and cannot be altered by the New York City Counsel.  22 Misc.3d at
167.
[14]    While noting that the "cases addressing the GMVA are scant," the court in Hughes cites to several cases
where courts have dismissed GMVA claims based on the failure to state facts showing that the defendant's alleged
acts "demonstrated any hostility based on gender."  Id. (citations omitted).

### III.   <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs' Amended Complaint fails to state any claims upon which relief can be granted as against Excel and, therefore, Defendant Excel respectfully moves this Court to dismiss all counts filed against it in their entirety, and for all such other and further relief as the Court deems just and proper.

Dated:        June 26, 2020

MEISTER SEELIG & FEIN LLP


/s/ Mitchell Schuster
Mitchell Schuster, Esq.
Thomas L. Friedman, Esq.
125 Park Avenue, 7th Floor
New York, NY 10017
Phone: (212) 655-3500
*Attorneys for Defendant Excel Sports*
*Management LLC*