**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BELINDA BAKER, STARBORNE
PRODUCTIONS LLC, and STARBREACHER
ENTERPRISES LLC,

                    Plaintiffs

v.

BENSALZ PRODUCTIONS LLC, and EXCEL
SPORTS MANAGEMENT LLC,

                    Defendants

Case No. 1:20-cv-03342-AJN-SN

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT BENSALZ PRODUCTIONS LLC'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I.    THE APPLICABLE STATUTES OF LIMITATIONS  BAR THE MAJORITY OF
      PLAINTIFFS' CLAIMS ............................................................................................ 3

      A.    The Parties' Relationship Ended by October 2012 ................................... 4

      B.    Plaintiffs' Claim One for Breach of the NDA is Barred ........................... 5

      C.    Plaintiffs' Claim Two for Breach of the Shopping Agreement is Barred .............. 7

      D.    Plaintiffs' Claim Three for Fraud is Barred ............................................ 7

      E.    Plaintiffs' Claim Four for Breach of Fiduciary Duty is Barred ............................. 9

      F.    Plaintiffs' Claim Five for IIED Is Barred by the Statute Of Limitations and
            Failure to Allege "Outrageous" Conduct ................................................ 10

      G.    Plaintiffs' Claim Six for Civil Conspiracy is Barred ............................................ 11

      H.    Plaintiffs' Claim Seven for Tortious Interference is Barred ................................. 12

      I.    Plaintiff Baker's Claim Under the New York City Administrative Code is
            Barred…………………………………………………………………………………16

II.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE CLAIMS UPON WHICH
      RELIEF CAN BE GRANTED ..................................................................................... 13

      A.    Claim One Fails to State a Viable Claim for Breach of Contract ......................... 13

      B.    Claim Two Fails to State a Viable Claim for Breach of Contract ....................... 15

      C.    Claim Three Fails to State a Viable Claim for Fraud ........................................... 18

            1.    Plaintiffs' Fraud Claim Duplicates their Breach of Contract Claim ......... 18

            2.    Plaintiffs' Claim for Fraud Must be Dismissed Because Plaintiffs Have
                  Not Pled the Required Elements ............................................................... 18

3.      Plaintiffs' Allegations Do Not Satisfy the Requirements of Federal
         Rule of Civil Procedure 9(b)................................................................... 21

D.      Claim Four Fails to State a Viable Breach of Fiduciary Duty Claim ................... 23

E.      Claim Five Fails to State a Claim for IIED........................................................... 24

F.      Claim Six Fails to Set Forth a Claim for Civil Conspiracy ................................. 25

G.      Claim Seven Fails to Set Forth a Viable Claim for Tortious Interference............ 26

H.      Plaintiffs Fail to State a Claim under the N.Y.C. Administrative Code .............. 28

CONCLUSION.......................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                           **Pages**

*2138747 Ontario, Inc. v. Samsung C & T Corp.*,
    31 N.Y.3d 372, 103 N.E.3d 774 (2018) ............................................................ 6

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*,
    120 F.3d 351 (2d Cir. 1997) ............................................................................. 6

*Adams v. Jenkins*,
    No. 115745/03, 2005 WL 6584554 (N.Y. Sup. Ct. April 22, 2005) .................................. 29

*Aetna Cas & Sur. Co. v. Leahey Constr. Co.*,
    219 F.3d 519 (6th Cir. 2000) ............................................................................. 26

*Albany Area Builders Ass'n v. Town of Guilderland*,
    74 N.Y.2d 372,  546 N.E.2d 920 (N.Y. 1989) ............................................................ 13

*Am. Fed'n of Musicians v. Atl. Recording Corp.*,
    203 F. Supp. 3d 301 (S.D.N.Y. 2016) ................................................................... 17

*Am. Rock Mechs., Inc. v. Thermex Energy Corp.*,
    608 N.E.2d 830 (Ohio Ct. App. 1992) ................................................................... 14

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*,
    328 F. Supp. 3d 141 (S.D.N.Y. 2018) .................................................................... 9

*Antioch Co. Litig. Trust v. Morgan*,
    No. 3:10–cv–156, 2013 WL 1338834 (S.D. Ohio April 1, 2013) ........................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................ 3, 27

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .............................................................................. 3

*Barnett v. Countrywide Bank, FSB*,
    60 F. Supp. 3d 379 (E.D.N.Y. 2014) ................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................... 3, 27

*Bossey v. Al Castrucci, Inc.*,
    664 N.E.2d 1301 (Ohio Ct. App. 1995) ............................................................ 8

*Bradley v. Miller*,
    96 F. Supp. 3d 753 (S.D. Ohio 2015) ............................................................ 11

*Breest v. Haggis*,
    115 N.Y.S.3d 322, 180 A.D.3d 83 (N.Y. App. Div. 2019) ............................... 29

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ............................................................................... 18

*Carofino v. Forester*,
    450 F. Supp. 2d 257 (S.D.N.Y. 2006) ............................................................. 18

*Charles v. Seinfeld*,
    410 F. Supp. 3d 656 (S.D.N.Y. 2019) .............................................................. 3

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
    234 F. Supp. 3d 462 (S.D.N.Y. 2017) ............................................................ 8, 9

*Cordero v. Epstein*,
    869 N.Y.S.2d 725 (N.Y. Sup. Ct. 2008) ......................................................... 13

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) .............................................................................. 1

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ............................................................................ 1

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ......................................................... 23, 24

*Ellul v. Congregation of Christian Bros.*,
    774 F.3d 791 (2d Cir. 2014) ............................................................................ 4

*Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004) ........................................................................... 22

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,

12 N.Y.3d 553, 910 N.E.2d 976 (2009)..................................................................... 19

*Foman v. Davis,*
371 U.S. 178 (1962)............................................................................................ 2

*Garza v. Marine Transp. Lines, Inc.,*
861 F.2d 23 (2d Cir.1988)................................................................................... 17

*Glob. Fin. Corp. v. Triarc Corp.,*
93 N.Y.2d 525, 15 N.E.2d 482 (1999)................................................................ 8

*Goodyear Publ'g Co., v. Mundell,*
75 A.D.2d 556, 427 N.Y.S.2d 242 (1st Dep't, 1980) ........................................ 17

*Gottwald v. Sebert,*
No. 653118/2014, 2016 WL 1365969 (N.Y. Sup. Ct. April 6, 2016) ............... 29

*Gross v. Nationwide Credit, Inc.,*
No. l:10-CV-00738, 2011 WL 379167 (S.D. Ohio Feb. 2, 2011) ..................... 27

*Gutkowski v. Steinbrenner,*
680 F. Supp. 2d 602 (S.D.N.Y. 2010)................................................................. 6

*Hall v. Cent. Ohio Elderly Care, LLC,*
No. 2:16-cv-01102, 2017 WL 4250522 (S.D. Ohio Sept. 21, 2017)................. 27

*Helman v. EPL Prolong, Inc.,*
743 N.E.2d 484 (Ohio Ct. App. 2000).............................................................. 10

*Hill v. Curcione,*
657 F.3d 116 (2d Cir. 2011)) ............................................................................ 2

*Hoeffner v. Orrick, Herrington & Sutcliffe LLP,*
85 A.D. 3d 457,  924 N.Y.S.2d 376 (1st Dep't 2011) ....................................... 26

*Howell v. New York Post Co., Inc.,*
81 N.Y.2d 115, 121, 612 N.E.2d 699 (1993)..................................................... 25

*Hughes v. Twenty-First Century Fox, Inc.,*
304 F. Supp. 3d 429 (S.D.N.Y. 2018)............................................................... 29

v

*Investors REIT One v. Jacobs*,
    546 N.E.2d 206 (Ohio 1989)..................................................................... 8

*Jakobovits v. PHL Variable Ins. Co.*,
    No. 17-cv-3527, 2018 WL 2291311 (E.D.N.Y. May 18, 2018) ...................... 4

*Jeffrey BB v. Cardinal McCloskey Sch. & Home for Children*,
    257 A.D.2d 21, 24, 689 N.Y.S.2d 721 (3d Dep't 1999) ................................ 19

*Jiaxing Hongyu Knitting Co., Ltd. v. Allison Morgan LLC*,
    No. 11 Civ. 9342, 2013 WL 81320 (S.D.N.Y. 2013) ..................................... 22

*Johnson v. Own of Onondaga*,
    No. 19-CV-11128, 2020 WL 419427 (S.D.N.Y. Jan. 27, 2020) ...................... 2

*Kaschalk v. Parker*,
    No. 5:15-cv-1871, 2016 WL 3668161 (N.D. Ohio July 11, 2016)................... 11

*Krys v. Butt*,
    486 F. App'x 153 (2d Cir. 2012) .................................................................. 23

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
    821 F. Supp. 2d 616 (S.D.N.Y. 2011)............................................................ 19

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)......................................................................... 22

*Liberty Synergistics Inc. v. Microflo Ltd.*,
    718 F.3d 138 (2d Cir. 2013).......................................................................... 4

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
    797 F.3d 160 (2d Cir. 2015)......................................................................... 21

*Mahalsky v. Salem Tool Co.*,
    461 F.2d 581 (6th Cir.1972) ........................................................................ 14

*Maniolos v. United States*,
    741 F. Supp. 2d 555 (S.D.N.Y. 2010)........................................................... 17

*Mason v. United States Fid. & Guar. Co.*,
  590 N.E.2d 799 (Ohio Ct. App. 1990)................................................................. 25

*Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*,
  852 F. Supp. 2d 925 (S.D. Ohio 2012) ............................................................. 12

*Monak v. Ford Motor Co.*,
  95 F. App'x 758 (6th Cir. Apr. 5, 2004) ........................................................... 25

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
  No. 15 CV 293, 2019 WL 4735387 (S.D.N.Y. Sept. 27, 2019) .................................. 5-6, 8

*Murphy v. Morlitz*,
  No. 15-CV-7256, 2017 WL 4221472 (S.D.N.Y. Sept. 21, 2017) .................................... 11

*Muto v. CBS Corp.*,
  668 F.3d 53 (2d Cir. 2012) .................................................................... *passim*

*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*,
  171 F. Supp. 3d 107 (S.D.N.Y. 2016) ................................................................. 6

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
  921 F. Supp. 2d 94 (S.D.N.Y. 2013) ................................................................. 23

*Ne. Gen. Corp. v. Wellington Advert., Inc.*,
  82 N.Y.2d 158, 624 N.E.2d 129 (1993) ............................................................. 24

*Patterson v. Balsamico*,
  440 F.3d 104 (2d Cir. 2006) ......................................................................... 10

*Petroholding Dominicana, Ltd. v. Gordon*,
  No. 18 CIV. 1497, 2019 WL 2343658 (S.D.N.Y. June 3, 2019) ...................................... 8,9

*Plasticware, LLC v. Flint Hill Res., LP*,
  852 F. Supp. 2d 398 (S.D.N.Y. 2012) ............................................................... 27

*Portfolio Recovery Assocs., LLC v. King*,
  14 N.Y.3d 410, 927 N.E.2d 1059 (2010) ............................................................. 6

*Project Cricket Acquisition, Inc. v. FCP Inv'rs VI, L.P.*,
　　159 A.D. 3d 600, 74 N.Y.S.3d 517 (1st Dep't 2018)......................................................... 26

*Pyle v. Pyle*,
　　463 N.E.2d 98 (Ohio Ct. App. 1983) ............................................................................... 25

*Rennick v. Provident Bank*,
　　No. 1:06-cv-820, 2008 WL 696893 (S.D. Ohio March 12, 2008) ..................................... 8

*River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*,
　　295 A.D.2d 274, 743 N.Y.S.2d 870 (1st Dep't 2002) ..................................................... 20

*Russo v. New York Presbyterian Hosp.*,
　　972 F. Supp. 2d 429 (E.D.N.Y. 2013) ............................................................................. 12

*Shoemaker v. Murdock*,
　　No. 18-cv-564, 2019 WL 358920 (S.D. Ohio Jan. 29, 2019)........................................... 26

*Smith v. Soros*,
　　No. 02 CIV.4229, 2003 WL 22097990 (S.D.N.Y. Sept. 5, 2003).............................. 11, 12

*Spears v. Chrysler, LLC*,
　　No. 3:08 CV 331, 2011 WL 540284 (S.D. Ohio Feb. 8, 2011) ................................. 10, 23

*Speedfit LLC v. Woodway USA, Inc.*,
　　53 F. Supp. 3d 561 (E.D.N.Y. 2014) ......................................................................... 13, 29

*Stafford v. Clever Investigations, Inc.*,
　　No. 06AP-1204, 2007 WL 2800333 (Ohio Ct. App. Sept. 27, 2007)................................ 11

*Starker v. Adamovych*,
　　No. 15 CIV. 3691, 2019 WL 4747668 (S.D.N.Y. Sept. 30, 2019)....................................... 1

*Stuart v. Am. Cyanamid Co.*,
　　158 F.3d 622 (2d Cir. 1998)................................................................................................ 4

*Tablack v. Wellman*,
　　No. 04-MA-218, 2006 WL 2590599 (Ohio Ct. App. Sept. 8, 2006)................................. 10

*Tedder, Trustee of the Roudebush Childrens Trust v. Kotar*,
　　No. 1:18-cv-48, 2019 WL 315097 (S.D. Ohio Jan. 24, 2019) ............................................ 23

*Thatcher v. Goodwill Indus. of Akron*,
　　690 N.E.2d 1320 (Ohio Ct. App. 1997) ................................................................... 25

*Thome v. Alexander & Louisa Calder Foundation*,
　　70 A.D.3d 88, 890 N.Y.S.2d 16 (1st Dep't 2009) ............................................... 12

*Universal Coach, Inc. v. New York City Transit Auth., Inc.*,
　　629 N.E.2d 28 (Ohio Ct. App. 1993) ....................................................................... 26

*Victory State Bank v. EMBA Hylan, LLC.*,
　　169 A.D.3d 963, 965, 95 N.Y.S.3d 97 (2d Dep't 2019) ...................................... 14

*Water St. Leasehold LLC v. Deloitte & Touche LLP*,
　　19 A.D.3d 183, 796 N.Y.S.2d 598 (1st Dep't 2005) ........................................... 20

*Welling v. Weinfeld*,
　　866 N.E.2d 1051 (Ohio 2007) .................................................................................. 11

*Yeager v. Local Union 20*,
　　453 N.E.2d 666 (Ohio 1983) ........................................................................... 11, 25

**Statutes**

N.Y. C.P.L.R. § 202 .................................................................................................... *passim*

N.Y. C.P.L.R. § 213(2) ................................................................................................... 6

N.Y. C.P.L.R. § 213(8) ................................................................................................... 9

N.Y. C.P.L.R. § 215(3) ............................................................................................. 10, 13

N.Y. C.P.L.R. § 214(4) ................................................................................................. 12

N.Y.C. Admin. Code § 8-101, redesignated as § 10-1101 ................................. 12, 28

N.Y.C. Admin. Code § 8-903, redesignated as § 10-1103 ................................. 28, 29

N.Y.C. Admin. Code § 8-904, redesignated as § 10-1104 ................................. 28, 29

N.Y.C. Admin. Code § 8-905(a), redesignated as § 10-1105(a) ............................. 13

N.Y. Gen. Oblig. Law § 15-301(1) ................................................................. 17

Ohio Rev. Code Ann. § 2305.06 ............................................................... 5, 8

Ohio Rev. Code Ann. § 2305.09 ....................................................... 8, 9, 11, 12

Ohio Rev. Code Ann. § 2305.11 ................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................... *passim*

Fed. R. Civ. P. 9(b) ............................................................................... 21

Fed. R. Civ. P. 8 ................................................................................. 27

**Other Authorities**

Restatement (Second) of Torts § 46 cmt. d (1965) ....................................... 25

## INTRODUCTION

As alleged, Plaintiff Belinda Baker ("Baker"), creator of *Finney the Starbreacher* (the "Project"), and her two "umbrella" companies, Starborne Productions LLC ("Starborne") and Starbreacher Enterprises LLC ("Starbreacher") (collectively, the two "Corporate Plaintiffs," and with Baker collectively, "Plaintiffs"), bring this fanciful, kitchen sink Amended Complaint[1] trying to blame Defendant Bensalz Productions LLC ("BSP") for Plaintiffs' failure, over many, many years (the vast majority working without BSP's involvement), to obtain interest in and financing for the Project.  BSP is not responsible, however, for the lack of commercial viability of Plaintiffs' Project.[2]  Under BSP's "bare-bones" (Plaintiffs' words), non-exclusive finder agreement with Starbreacher, what is termed a "Shopping Agreement," BSP agreed only that if it "seeks and secures financing," a service that it "may" provide, it would receive a "finder's fee"

---

[1] The Amended Complaint is Exhibit 1 to the June 26, 2020 Declaration of Mark H. Moore ("Moore Decl.").  The Amended Complaint contains duplicate paragraph numbering, and to avoid confusion, where a paragraph number appears more than once, paragraph numbers are cited followed by the page number in the form ¶ [number]/[page number].  For the Court's convenience, the December 2011 Non-Disclosure - Confidentiality Agreement executed by Belinda R. Baker, individually, and Richard B. Bennett, Jr., individually ("NDA"), Am. Cplt. Ex. A, is Moore Ex. 2; and the November 18, 2011 Agreement between BenSalz Productions, LLC and Starbreacher Enterprises LLC ("Shopping Agreement"), Am. Cplt. Ex. B, is Moore  Ex. 3.  A November 4, 2012 email from Gary Rhein to Michael Skouras ("Rhein Firing Email"), referenced in the Amended Complaint, Am. Cplt. ¶ 65 is Moore Ex. 4.  As this Court has held:

> Generally, "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" may be considered in assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010). A court may also consider "documents plaintiff[ ] had ... in [his] possession or had knowledge of and upon which [he] relied in bringing suit," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) . . . .

*Starker v. Adamovych*, No. 15 CIV. 3691, 2019 WL 4747668, at *3 (S.D.N.Y. Sept. 30, 2019).

[2] As required, BSP accepts, for purposes of its Rule 12(b)(6) motion, all plausible and well-pled factual allegations in the complaint as true.  BSP and its individual members, however, deny the tenor and substance of Plaintiffs' allegations and conclusions and deny any alleged wrongdoing, particularly the allegations concerning Baker's December 2011 New York trip.

of 10%.  Thus, far from requiring BSP to take all the very specific actions Plaintiffs claim

(erroneously) that BSP failed to take—which appear nowhere in the integrated written contract—

BSP would be compensated only if it sought financing and was successful.

Although the parties' brief relationship was at times contentious—with, for example,

Plaintiffs' agent Gary Rhein ("Rhein") calling BSP's Michael Skouras a "sissy"; and inviting

Skouras, whom Rhein called "mr bad ass," to a "personal face to face meeting" because Rhein

"want[ed] a boxing match with you [Skouras]" in which Rhein "would destroy you [Skouras],"

Rhein Firing Email, Moore Ex. 4—in fact, BSP undertook substantial efforts to secure financing.

It had every motive to do so, as it would get paid only if financing was secured and the project

produced.  Notwithstanding BSP's efforts—and whatever efforts Plaintiffs undertook without

BSP both before and after the parties' relationship—the market determined that the Project

lacked commercial viability.  BSP is not liable for that judgment, and Plaintiffs' effort to tag BSP

with liability for its Project's lack of success falls short of the mark in every way.

The procedural history of this matter, including its transfer to the Southern District of

New York, is detailed in the Letter Motion for Extension of Time to Respond to the Amended

Complaint addressed to Judge Alison J. Nathan from Mitchell Schuster (counsel to Excel) dated

May 5, 2020.  (Dkt. No. 63).  As set forth in this motion, each and every cause of action

contained in the Amended Complaint must be dismissed.  And, because the deficiencies cannot

be cured, the normally liberal leave to amend should be denied.  "Where an amendment would

be futile, leave to amend is not required."  *Johnson v. Own of Onondaga*, No. 19-CV-11128,

2020 WL 419427, at *2 (S.D.N.Y. Jan. 27, 2020) (citing *Hill v. Curcione*, 657 F.3d 116, 123-24

(2d Cir. 2011)); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) (leave to amend should be

liberally granted unless, *inter alia*, amendments would be futile).

## ARGUMENT

This Court recently delineated the following standard  for a Rule 12(b)(6) motion to

dismiss:

> To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain
> sufficient factual matter, accepted as true, to 'state a claim to relief that is
> plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 , 129 S.Ct. 1937, 173
> L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127
> S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plaintiff is not required to provide
> "detailed factual allegations" in the complaint but must assert "more than labels
> and conclusions." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Ultimately, the
> "[f]actual allegations must be enough to raise a right to relief above the
> speculative level." *Id*.  The Court must accept the allegations in the complaint as
> true and draw all reasonable inferences in the non-movant's favor.   *ATSI
> Communs., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

*Charles v. Seinfeld*, 410 F. Supp. 3d 656, 659 (S.D.N.Y. 2019), *aff'd*, 803 F. App'x 550 (2d Cir.

May 7, 2020).

## I.     THE APPLICABLE STATUTES OF
##        LIMITATIONS  BAR THE MAJORITY OF PLAINTIFFS' CLAIMS

A court may consider a statute of limitations defense on a motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(6) if the defense appears on the face of the complaint.  *Id.* at 659 (citing

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)).  As detailed

below, the face of the Amended Complaint shows that the parties' relationship fell apart and

interaction ceased by October 2012, with BSP officially "fired" on November 4, 2012, more than

six years before plaintiffs commenced this case.  BSP demonstrates herein that under the

applicable statutes of limitations, Plaintiffs' claims for breach of contract, fraud, breach of

fiduciary duty, civil conspiracy and tortious interference, and violations of the New York City

Administrative Code, as well as most of Plaintiffs' claim for intentional infliction of emotional

distress ("IIED"), are all barred and should be dismissed by this Court with prejudice.[3]

In Subsections B through H below, BSP will address whether the statute of limitations from Ohio (Plaintiffs' residence) or New York (BSP's residence and the forum state) should govern.  "[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013).  "Procedural issues such as statutes of limitation are governed by New York law."  *Jakobovits v. PHL Variable Ins. Co.*, No. 17-cv-3527, 2018 WL 2291311, at *5 (E.D.N.Y. May 18, 2018).  In determining the pertinent statutes of limitations, this Court should apply the governing borrowing statute,  N.Y. C.P.L.R. § 202 (the "Borrowing Statute" or "CPLR 202").  Under CPLR 202, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued."  *Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012) (quoting *Stuart v. Am. Cyanamid Co.,* 158 F.3d 622, 627 (2d Cir. 1998)).

A.     **The Parties' Relationship Ended by October 2012**

The Amended Complaint describes conduct that occurred from late 2011 through October 2012, when, at the latest, "things had really fallen apart between Ms. Baker and the Defendants."  Am. Cplt. ¶ 60.  Thus, "Ms. Baker and the Defendants' working relationship ended in Nov. 2012."  *Id.* ¶ 81.  These allegations—taken with Plaintiffs' additional allegations of specific conduct only prior to November 2012—place virtually all Plaintiffs' claims outside the applicable limitations period and mandate dismissal.

---

[3] As discussed in Point I.F below, most of Plaintiff's claim for intentional infliction of emotional distress rests in part on conduct alleged within the one year period preceding the filing of the claim, and is not wholly barred by the governing statute of limitations.  However, as discussed in Point II below, that part of the claim not barred by the statute of limitations is so patently meritless that it should be dismissed as well.

4

In that regard, a document referenced in the Amended Complaint shows more specifically that on November 4, 2012, at 1:38 p.m., Rhein, Plaintiffs' agent (who submitted an affidavit attached to the Amended Complaint at page 65 of 65), emailed BSP's Skouras and categorically advised BSP that "You are now fired" and "I am glad to be done with you."  Moore Decl., Ex. 4 (Rhein Firing Email).[4]    Plaintiffs filed suit on November 5, 2018, over six years after BSP was fired and the actions were complete.  As set forth below, because all of the statutes of limitations ran before the lawsuit was filed, each referenced claim should be dismissed.[5]

**B.      Plaintiffs' Claim One for Breach of the NDA is Barred**

As alleged in the Amended Complaint, Plaintiffs reside in the State of Ohio, and contend that BSP is a party to the contract.  Am. Cplt ¶¶ 5-6, 20.   For the reasons which follow, Plaintiffs' contract claim that BSP violated the NDA is barred by the statute of limitations.

First, the NDA's choice-of-law provision does not trump New York's Borrowing Statute. The NDA states, "This Agreement shall be enforced by the laws of the United States and of the State of Ohio," Moore Decl., Ex. 2, and Plaintiffs claim that because of this choice of law provision, Ohio's eight-year statute of limitations for breach of contract applies.  Am. Cplt. ¶ 91; Ohio Rev. Code Ann. § 2305.06 (eight years for contracts).  Not true.  "As the New York Court of Appeals has explained, '[c]ontractual choice of law provisions typically apply to only substantive issues . . . and statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right.'"  *Mortg. Resolution Servicing, LLC v.*

---

[4] The Rhein Firing Email, in which Skouras emails, "We are OUT and your project is DEAD"  is referenced in paragraph 66 of the Amended Complaint, which states that in November 2012 Skouras sent an email that the project was "dead."  Am. Cplt. ¶ 66.

[5] Plaintiffs allege the parties' dealings and relationships ended by October 2012, and, accordingly, this motion can be granted on the basis of the Amended Complaint and without reference to the Rhein Firing Email if the Court deems that appropriate.  That email simply provides additional support.

*JPMorgan Chase Bank, N.A.,* No. 15 CV 293, 2019 WL 4735387, at *6 (S.D.N.Y. Sept. 27, 2019) (citing *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 31 N.Y.3d 372, 377, 103 N.E.3d 774, 777 (2018)); *see also Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 415-16, 927 N.E.2d 1059, 1061 (2010) (analogous Delaware choice of law provision did not determine statute of limitation, which was decided under New York's Borrowing Statute).  The only time that a choice-of-law provision trumps New York's Borrowing Statute is where "the parties explicitly indicate such a choice," *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 115 (S.D.N.Y. 2016) (citing *Portfolio Recovery Assocs.*, 14 N.Y.3d at 416), and that did not happen here.

Second, the applicable statute of limitations for breach of contract under the Borrowing Statute is six years.  As noted, under the Borrowing Statute, a court must apply the shorter limitations period of either (1) New York; or (2) the state where the cause of action accrued. *Muto,* 668 F.3d at 57.  The shorter statute of limitations belongs to New York—pursuant to N.Y. C.P.L.R. § 213(2), a claim for breach of contract must be filed within six years of when the claim accrues, as opposed to the eight year statute in Ohio.  Therefore, the Court does not have to determine for these purposes where the claim accrued, since even if the claim accrued in Ohio, the shorter New York statute would apply.  CPLR 202.[6]

Under New York's six-year statute, Claim One is barred, as Plaintiffs allege that prior to October 2012, BSP purportedly shared the materials with, among others, Steven Spielberg and Dreamworks; Lis Wiehl; Animal Planet/Discovery Channel; Harvey Weinstein and the

---

[6] New York's statute of limitations for breach of contract is six years, and it accrues upon breach. *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 615 (S.D.N.Y. 2010) (citing N.Y.C.P.L.R. §213(2)); *see also ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (statute runs from breach, not discovery of any breach).

Weinstein Company; Jeff Bazoian; Disney; MGM Blue Sky, Paramount and Sony Pictures;

Gretchen Carlson; Bruce Berman; Jeff Young/Arc Productions.  Am. Cplt. Claim One and ¶¶ 26,

27, 29, 39, 42, 50, 51, 57, 58, 91-101 (dates of alleged disclosures); *see also* Point I.A. *supra*

(end of relationship)—all conduct occurring more than six years before the lawsuit was filed on

November 5, 2018.

     **C.**    **Plaintiffs' Claim Two for Breach of the Shopping Agreement is Barred**

     Plaintiffs allege that "[a]s they entered into these contracts [including the Shopping

Agreement] and engaged the services of their NY based businesses, NY law and a 6 year statute

of limitations applies."  Am. Cplt. ¶ 113.  Taking Plaintiffs at their word, and based on the

analysis of New York's borrowing statute in Point I.B, *supra*, Claim Two for breach of the

Shopping Agreement is barred by New York's six-year statute of limitations.

     As discussed above, by October 2012, "things had . . . fallen apart" and Starbreacher fired

BSP on November 4, 2012.  *See* Point I.A, *supra*.  Thus, there was no contract to breach after

November 4, 2012, and any breaches alleged must pre-date the relationship's collapse in October

2012 and the November 4 contract termination, and thus fall outside the limitations period.

Indeed, all the alleged specific failures to use purported best efforts to get the Project financed

and produced occurred before November 5, 2012.  Am. Cplt. ¶¶ 39-50, 109-110.  Thus, New

York's six-year statute of limitations bars Claim Two for Breach of Contract.

     **D.**    **Plaintiffs' Claim Three for Fraud is Barred**

     Ohio's four-year statute of limitations bars Plaintiffs' fraud claim.  As stated above,

under New York's Borrowing Statute, a court must apply the shorter limitations period of either

(1) New York; or (2) the state where the cause of action accrued.  *Muto,* 668 F.3d at 57.  Here,

the claim for fraud accrued in Ohio.  This is because a claim accrues under New York's

Borrowing Statute "at the time and the place of injury" and where, as here, the alleged injury is purely economic, "the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Mortg. Resolution Servicing*, 2019 WL 4735387, at *7 (citing, *inter alia*, *Glob. Fin. Corp. v. Triarc Corp.,* 93 N.Y.2d 525, 529, 15 N.E.2d 482, 485 (1999)) (internal quotations omitted).  In cases like this, courts applying New York law have found that claims of fraud, which are centered on economic injury, accrue in the plaintiff's state of residence.  *See, e.g.*, *Mortg. Resolution Servicing,* 2019 WL 4735387, at *7; *Petroholding Dominicana, Ltd. v. Gordon*, No. 18 CIV. 1497, 2019 WL 2343658, at *4 (S.D.N.Y. June 3, 2019) (same).  Thus, the fraud claim accrued in Ohio, the state of Plaintiffs' residence.[7]  Thus Ohio, with the shorter of the statute of limitations, supplies the applicable standard.

Here, Plaintiffs claim that from 2011 through October 2012—more than six years ago— BSP defrauded them, essentially by falsely representing performance under the Shopping Agreement.  Am. Cplt. Claim Three.  Such a claim, even if Plaintiffs could state a viable one, is barred under Ohio's four-year statute of limitations.  *See Rennick v. Provident Bank*, No. 1:06-cv-820, 2008 WL 696893, at *10 (S.D. Ohio March 12, 2008) (citing Ohio. Rev. Code §2305.09 and dismissing complaint).  The limitations period begins to run when the claimant discovers or, in the exercise of reasonable care, should have discovered the fraud.  *Bossey v. Al Castrucci, Inc.*, 664 N.E.2d 1301, 1302-03 (Ohio Ct. App. 1995) (citing *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989)).

In this case, Plaintiffs allege specific misrepresentations during the months prior to

---

[7] The individual plaintiff, Baker, resides in the State of Ohio, and both of her businesses are located and organized there.  Accordingly, all three "reside" in Ohio for the purposes of the Borrowing Statute.  *See, e.g., Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.,* 234 F. Supp. 3d 462, 469 (S.D.N.Y. 2017) (business with its principle place of business in Germany, and also organized there, was resident there for purposes of the Borrowing Statute).

November 2012.  Am. Cplt. ¶¶ 34-35, 39, 43, 50, 51, 54, 55, 120, 121, 122, 124, 125, 126, 127, 128, 139/47 (alleging misrepresentations in May, June, July, August and October 2012).  More generally, Plaintiffs allege that, by October 2012 at the latest, "things had really fallen apart between Ms. Baker and the Defendants," and that Defendants had "been exposed as liars."  Am. Cplt. ¶¶ 60, 64.  Thus, the alleged misrepresentations were made and were discoverable well more than four years before November 5, 2018, when the complaint was filed.  Applying the four-year statute of limitations, Plaintiffs' fraud claim should be dismissed in its entirety.[8]

### E.      Plaintiffs' Claim  Four for Breach of Fiduciary Duty is Barred

Plaintiffs' claim for breach of fiduciary duty is barred by the applicable statute of limitations.  As stated previously, under New York's Borrowing Statute, a court must apply the shorter limitations period of either (1) New York; or (2) the state where the cause of action accrued.  *Muto,* 668 F.3d at 57.  In cases like this, courts applying the Borrowing Statute  have found that claims of breach of fiduciary duty, which are centered on economic injury, accrue in the plaintiff's state of residence.  *See, e.g., Petroholding Dominicana, Ltd.*, 2019 WL 2343658, at *4; *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n,* 328 F. Supp. 3d 141, 161 (S.D.N.Y. 2018).[9]  Thus, the claim for breach of fiduciary duty accrued in Ohio, the state of Plaintiffs' residence, and Ohio supplies the shorter applicable statue of limitations.

It is undisputed that breach of fiduciary duty claims are subject to a four-year statute of limitations in Ohio.  *Antioch Co. Litig. Trust v. Morgan*, No. 3:10–cv–156, 2013 WL 1338834, at *1 (S.D. Ohio April 1, 2013) (citing Ohio Rev. Code § 2305.09(D)).  Such a claim accrues when

---

[8] Even under New York's six-year statute of limitations for fraud, CPLR § 213(8), the statute of limitations would bar the fraud claim, since each of the alleged fraudulent misrepresentations was made prior to November 2012, more than six years before filing.

[9] As stated previously, the individual Plaintiff, Baker, resides in the State of Ohio, and both of her businesses are located and organized there.  Accordingly, all three "reside" in Ohio for the purposes of the Borrowing Statute.  *See, e.g., Commerzbank AG.*, 234 F. Supp. 3d at 469.

the act or commission constituting the breach of duty occurs unless it could not have been discovered with due diligence. *Tablack v. Wellman*, No. 04-MA-218, 2006 WL 2590599, at *13 (Ohio Ct. App. Sept. 8, 2006) (citing *Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484,497 (Ohio Ct. App. 2000)). This action was commenced well after the running of Ohio's four-year statute. There is absolutely no allegation of any relationship—fiduciary or otherwise—between the parties after October 2012 when the relationship collapsed, and certainly not after November 4, 2012, when BSP was fired, and, as discussed at length above, the misconduct alleged all relates to periods prior to November 2012. The fiduciary duty claim is time-barred.[10]

## F.    Plaintiffs' Claim  Five for IIED Is Barred by the Statute Of Limitations and Failure to Allege "Outrageous" Conduct

Claim Five, purporting to set forth a claim for IIED based on two separate sets of conduct—alleged conduct in 2011-12, and a single email with malware purportedly sent by "BenSalz" in 2018, Am. Cplt. ¶¶ 136-139/50-51, 146/55, 147/56, 148/56, 148/57, 149/58— should be dismissed in its entirety. First, New York's statute of limitations bars the 2011-2012 claims. As previously stated, under New York's Borrowing Statute, a court must apply the shorter limitations period of either (1) New York; or (2) the state where the cause of action accrued. *Muto,* 668 F.3d at 57. New York has a one-year statute of limitations for IIED. N.Y. C.P.L.R. § 215(3); *Patterson v. Balsamico*, 440 F.3d 104, 112 n.4 (2d Cir. 2006). Because of the Borrowing Statute's imposition of the shorter of the two possible statutes of limitations, it does

---

[10] In New York, "[t]he statute of limitations for a breach of fiduciary duty claim sounding in tort is three years when money damages are sought, but the statute of limitations for a breach of fiduciary duty claim sounding in contract is six years." *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014) (citing *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 582 (E.D.N.Y. 2014) (citing N.Y. C.P.L.R. § 213(2))). As set forth herein, Ohio's shorter statute of limitations applies to Plaintiffs' breach of fiduciary duty claim. In any event, as set forth above, all the alleged failures of performance are alleged to have taken place before November 4, 2012, and if BSP had any contract-based fiduciary duty—and it did not—it certainly had none after it was fired. Thus, the claims are barred under a six-year statute as well.

not make a difference whether the statute in Ohio might be longer than one year—the one year period governs. *Smith v. Soros*, No. 02 CIV.4229, 2003 WL 22097990, at *7 (S.D.N.Y. Sept. 5, 2003) (barring IIED claim using this analysis), *aff'd*, 111 F. App'x 73 (2d Cir. 2004).[11]  Second, for reasons explained in Point II below, the single alleged act within the one year limitations period Baker cites—the alleged 2018 email—fails to meet the incredibly stringent standard for an IIED claim.

### G.    Plaintiffs' Claim Six for Civil Conspiracy is Barred

When a claim for civil conspiracy is raised under New York's Borrowing Statute, the court applies the statutes of limitation of the underlying claims.  Here, all of Plaintiffs' claims under discussion in Point I are time-barred (other than the single instance of IIED alleged in 2018, which claim should be dismissed for failing to state a cause of action).  Accordingly, Plaintiffs' claims for civil conspiracy must be dismissed.  *See Murphy v. Morlitz*, No. 15-CV-7256 , 2017 WL 4221472, at *8 (S.D.N.Y. Sept. 21, 2017), *aff'd*, 751 F. App'x 28 (2d Cir. 2018) ("statute of limitations for civil conspiracy is the same as that for the underlying tort"); *accord Bradley v. Miller*, 96 F. Supp. 3d 753, 768 n.12, 770 (S.D. Ohio 2015) (finding underlying fraudulent conveyance claim time-barred, and therefore dismissing civil conspiracy claim as time-barred).

---

[11]  A four-year limitation period in Ohio Rev. Code § 2305.09 applies to IIED claims generally.  *Yeager v. Local Union 20,* 453 N.E.2d 666, 672 (Ohio 1983), *abrogated on other grounds*, *Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (Ohio 2007).  Where, however, as here regarding the 2011-2012 claim, the IIED claim arises from an underlying claim based on alleged intentional acts of offensive conduct, the one-year statute of limitations of Ohio Rev. Code § 2305.11 applies.  *Kaschalk v. Parker*, No. 5:15-cv-1871, 2016 WL 3668161, at *2 (N.D. Ohio July 11, 2016) (citations omitted); *see also Stafford v. Clever Investigations, Inc.*, No. 06AP-1204, 2007 WL 2800333, at *2 (Ohio Ct. App. Sept. 27, 2007).

**H.      Plaintiffs' Claim Seven for Tortious Interference is Barred**

Plaintiffs' Claim for tortious interference is barred by New York's three year statute of limitations for tortious interference, measured from occurrence of the allegedly tortious act. N.Y. C.P.L.R. § 214(4); *Thome v. Alexander & Louisa Calder Foundation*, 70 A.D.3d 88, 108, 890 N.Y.S.2d 16, 30 (1st Dep't 2009).  Under New York's Borrowing Statute, a court must apply the shorter limitations period of either (1) New York; or (2) the state where the cause of action accrued.  *Muto*, 668 F.3d at 57.  Thus it does not make a difference that Ohio's statue of limitations is longer.  *See Smith*, 2003 WL 22097990, at *7 (barring IIED claim using this analysis); Ohio Rev. Code § 2305.09(D) (four year statute); *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 934 (S.D. Ohio 2012) (same).

Thus, to the extent that Plaintiffs rely on any purported activity alleged from 2011 and 2012, although we glean no allegations of any actual interference during that time, as opposed to alleged threats, any claims based on that conduct are barred.  Beyond that, as set forth in the discussion of the pleading deficiencies of Claim Seven, Plaintiffs fail to provide BSP with adequate notice of any actual instances of interference or the time frame of such actions by BSP (if any) with any specificity, and for this additional reason should be dismissed.

**I.      Plaintiff Baker's Claim Under the**
**         New York City Administrative Code Is Barred**

In addition to the pleading deficiencies discussed in Point II.H, *infra*, Plaintiff Baker's undefined gender-based claim under the New York City Administrative Code ("N.Y.C. Code") is time barred.  First, to the extent that that Baker asserts a claim for gender-based discrimination under Article Eight of the N.Y.C. Code—the Amended Complaint recites § 8-101—such a claim is barred by the CPLR's applicable three-year statute of limitations.  *See Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 445 (E.D.N.Y. 2013) (New York City Human Rights

Law subject to three year statute of limitations) (internal citation omitted).

Second, if Baker intends to assert a claim under the N.Y.C. Code's Victims of Gender-Motivated Violence Protection Act, N.Y.C. Code §§ 8-901 *et seq.* ("GMVA"), the New York C.P.L.R. § 215(3) sets a one-year limitations period for asserting an intentional tort. *Cordero v. Epstein*, 869 N.Y.S.2d 725, 729 (N.Y. Sup. Ct. 2008) (finding N.Y. C.P.L.R. § 215(3) intentional tort period  applies to GMVA claims, and dismissing GMVA claim asserted almost six years after alleged contact as time-barred).  Although the N.Y.C. Code purports to set a seven-year statute of limitation for GMVA claims (N.Y.C. Code § 8-905(a), redesignated as § 10-1105(a)), the state legislature's enactment of a detailed and pervasive scheme setting forth the times for commencing various types of litigations, including time limits for claims involving criminality and sexual misconduct, preempts the New York City Council's effort.  *Cordero*, 869 N.Y.S.2d at 729 (finding GMVA's seven-year statute of limitations preempted by N.Y. C.P.L.R. Article 2) (citing *Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 377, 546 N.E.2d 920 (N.Y. 1989) for proposition that detailed statutory scheme may evidence legislative intent to preempt, and where state preempts field, local law regulating same subject matter is preempted).

## II.    PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

### A.    Claim One Fails to State a Viable Claim for Breach of Contract

Plaintiffs' claim against BSP for breach of the NDA rests upon their misrepresentation—resting on a document Plaintiffs unilaterally and fraudulently altered—that BSP was the NDA's contracting party.  In fact, contrary to Plaintiffs' false allegation that "Plaintiffs and Defendant BenSalz entered into a non-disclosure agreement on 12/21/2011 attached hereto as Exhibit A," Am. Cplt. ¶ 91, and the allegation that Richard Bennett "signed a non-disclosure agreement ('NDA') with Ms. Baker and her company *on behalf of BenSalz Productions*," *id.* ¶ 20 (emphasis

added)—BSP was not a party to the NDA.  On the face of the NDA, "Richard B. Bennett, Jr."

executed that agreement in his personal capacity.  The body of the document references

providing materials to "Richard Bennett" (whose name is handwritten, with Michael Skouras'

stricken), not "BenSalz."  Then, the document is signed by "Richard B. Bennett, Jr.," with his

name handwritten beneath it.  *See* Am. Cplt. Ex. A.

In fact, when Bennett forwarded the NDA to Baker by email, nothing else was written on

the agreement.  *See* Dkt. No. 21-3 (Declaration of Richard B. Bennett, Jr. in Support of

Defendant Bensalz Productions LLC's Motion to Dismiss the Complaint ("Bennett Decl.")) ¶ 8;

Dkt. No. 21-4 (Bennett Decl., Ex. 1 (December 13, 2011 email from Richard Bennett

("rbennett@aam.us.com") to starbreacher1@hotmail.com, enclosing the NDA agreement he

signed individually, with no reference to Bensalz Productions)).[12]  Exhibit A that Plaintiffs attach

to their Amended Complaint, however, contains the handwritten notation—added ostensibly by

Plaintiffs but not BSP or Bennett—"on behalf of BenSalz Productions."  Thus, after the

document left Bennett's possession, it was altered.  Ignoring the broader implications of that

alteration for the moment, at the very minimum it reflects Plaintiffs' understanding that as signed

by Bennett without those words, the NDA did not bind BSP.  Ohio law requires privity between

the parties before a party may maintain an action for breach of contract.  *See Mahalsky v. Salem

Tool Co.*, 461 F.2d 581, 584 (6th Cir.1972).[13]  Because BSP was not the contracting party, it

cannot be liable for breach of the NDA.

---

[12] In contrast, the Shopping Agreement clearly identifies BSP as the contacting party,
Moore Decl., Ex. 3, at 1, Introduction.  And the Shopping Agreement is executed by "BENSALZ
PRODUCTIONS, LLC By: /s/Richard B. Bennett, Jr.  Its: [handwritten] Partner."  *Id.*

[13] *See also Am. Rock Mechs., Inc. v. Thermex Energy Corp.*, 608 N.E.2d 830, 833 (Ohio
Ct. App. 1992); *accord* (*New York law*) *Victory State Bank v. EMBA Hylan, LLC.*, 169 A.D.3d
963, 965, 95 N.Y.S.3d 97, 101 (2d Dep't 2019) ("[o]ne cannot be held liable under a contract to
which he or she is not a party"; dismissing complaint based on lack of privity).

Additionally, Plaintiffs fail to allege that the purported violation of the NDA resulted in any unauthorized use of Plaintiffs' purported intellectual property, and, thus, Plaintiffs cannot allege any specific harm, notwithstanding the fact that the purported breach occurred more than six years ago.  This provides an additional ground for dismissing that breach of contract claim.

### B.   Claim Two Fails to State a Viable Claim for Breach of Contract

In Claim Two, Plaintiffs contend that BSP breached a non-exclusive "Shopping Agreement" between BSP and Starbreacher by "not sending Ms. Baker's materials to all of the promised contacts"  and "fail[ing] to follow up with Ms. Baker's own leads."[14]  Am. Cplt. ¶ 110. The Shopping Agreement, however, unambiguously imposes no such requirements, and thus the claim for breach of that Agreement should be dismissed.

Under its "bare-bones" non-exclusive finder agreement with Starbreacher, Am. Cplt. ¶ 60, in terms of securing financing, BSP agreed only that if it "seeks and secures financing" it would receive a finder's fee of 10%:

> [i]f BSP seeks and secures financing for [Finney] which results in [Starbreacher] entering into an agreement with a financier to invest in, lend for, finance or provide quantifiable in-kind services in connection with [Finney], in any amount, conditioned upon receipt of such funds or delivery of such services, BSP shall be entitled to a finder's fee, calculated as ten percent (10%) of the total amount of the financing invested or the reasonable financial value of in-kind services provided by an financier whether in cash or in-kind.

---

[14] Plaintiffs also allege that BSP discouraged Baker from following other leads.  Am. Cplt. ¶ 110.  It is difficult to conceive how this is a breach of the Shopping Agreement, which, of course, contains no provision conceivably relevant.  In any event, the Shopping Agreement was a non-exclusive arrangement.  If, at any time, Plaintiffs were unhappy with BSP, they simply could have contacted their own leads by themselves and/or engaged others to help them find financing. Indeed, those options have always been and remain open to Plaintiffs.

Shopping Agreement ¶ 2.b.  Indeed, in terms of Co-Executive Producer services that BSP agreed to provide, the Shopping Agreement specifically provides that those services permissively "may" including finder services:

> 1.   <u>Services:</u>   The services of BSP shall include those services regularly associated with serving as a co-executive producer of a first class feature film and *may include finder services* as described below.

Shopping Agreement ¶ 1 (emphasis added).  Thus, far from requiring BSP to take any or all the very specific actions Plaintiffs claim (erroneously) BSP failed to take—which appear nowhere in the integrated written contract—BSP would be compensated with a finder's fee only *if* it sought financing and was successful.  Shopping Agreement ¶ 1.

To the extent that Plaintiffs attempt to engraft some additional representation or obligations to "promote her project to their and her extensive industry contacts in order to seek the sale, financing, and or production of her project. . . ." (Am. Cplt. ¶ 105), or impose "some duty to have made best efforts" to get the project financed or "to make an honest, vested effort to adequately represent Ms. Baker and her project," (*id.* ¶ 109), those obligations are found nowhere in the agreement, and are contrary to its terms.

Notably, the Shopping Agreement contains a strong integration clause providing that it contains the full and complete understanding of the parties, and cannot be modified except by a signed writing:

> 12.   <u>Entire Agreement:</u>   This Agreement contains the full and complete understanding between the parties with reference to the within subject matter, supersedes all prior agreements and understandings whether written or oral pertaining thereto, and cannot be modified except by a written instrument signed by each party.

Shopping Agreement ¶12.  The Shopping Agreement is governed by New York law, *id.* ¶ 11, and the Second Circuit has stated that when the parties' agreement contains such an integration clause, evidence of other antecedent understandings cannot be admitted to vary the writing:

16

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988).  BSP agreed to perform only as expressly set forth in the Shopping Agreement.  Thus, to the extent that Plaintiffs attempt to impose further obligations beyond any explicitly set forth in the Shopping Agreement, based on alleged oral promises before they signed the Shopping Agreement, that are not reflected in the writing, they are barred.  *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 56 (2d Cir. May 2, 2012) ("Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss.") (collecting cases).  Similarly, the requirement that any modification be in writing, Shopping Agreement ¶ 12, precludes assertion of any purported post-execution oral promises. *Goodyear Publ'g Co., v. Mundell*, 75 A.D.2d 556, 557, 427 N.Y.S.2d 242, 243 (1st Dep't, 1980) (where agreement provided that it "may not be changed unless the parties to it agree in writing," New York General Obligations Law §15-301(1),[15] precluded claims based on alleged supervening oral agreements).  At the end of the day, under the unambiguous contract language, BSP simply was not obligated to take the actions Plaintiffs claim it failed to take, and its contract (and related) claim should be dismissed.  *See Am. Fed'n of Musicians v. Atl. Recording Corp.*, 203 F. Supp. 3d 301, 303 (S.D.N.Y. 2016) (granting the defendants' motion to dismiss "[b]ecause the Court may not add, ignore, or distort the clear and unambiguous terms of the contract, as urged by Plaintiffs").

---

[15] The N.Y. General Obligations Law §15-301(1) provides:  "A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."

### C.      Claim Three Fails to State a Viable Claim for Fraud

#### 1.      Plaintiffs' Fraud Claim Duplicates their Breach of Contract Claim

Plaintiffs' fraud claim suffers from several fatal deficiencies.  At the outset, it must be dismissed because it duplicates their claim for breach of the Shopping Agreement.  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011) ("Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract.") (collecting cases).[16]

> Where, as here, a fraud claim is stated in conjunction with a breach of contract claim, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 197-98 (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)) (internal quotations omitted). Plaintiffs here have failed to meet any of these requirements.

*First*, as outlined in Point II.D below, Plaintiffs have not demonstrated that BSP had any legal duty to Plaintiffs separate from the limited contractual relationship created by the Parties' Shopping Agreement.  *Second*, Plaintiffs have alleged no fraudulent misrepresentation collateral or extraneous to the contract.  To the contrary, Plaintiffs have alleged with respect to their fraud claim only alleged misrepresentations concerning performance under the Shopping Agreement. *See e.g.*, Am. Cplt. ¶ 117.  These allegations relate to the claimed breach of the Shopping Agreement by purportedly failing to disseminate Plaintiffs' material.  *Id.* ¶ 110.  *Third*, none of the "special damages" sought by Plaintiffs as a result of Defendants' alleged fraud are available

---

[16] New York law applies to Plaintiffs' claims for fraud, where Plaintiffs have alleged as such, Am. Cplt. ¶ 116, and Plaintiffs' allegations of fraud arise out of conduct that allegedly took place in New York.  *See id.* ¶¶ 7, 18, 113, 134.

as a matter of law.  While Plaintiffs assert a claim for punitive damages or emotional distress based on the alleged fraud, those damages are not available under the facts alleged.[17]

### 2. Plaintiffs' Claim for Fraud Must be Dismissed Because Plaintiffs Have Not Pled the Required Elements

Plaintiffs' fraud claim must also be dismissed because Plaintiffs have not pled the required elements of intent, justifiable reliance, or damages.  "Under New York law, fraud requires a showing of '(1) a material misrepresentation of fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages.'"  *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 621 (S.D.N.Y. 2011), *aff'd*, 478 F. App'x 679 (2d Cir. Apr. 19, 2012) (quoting *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 910 N.E.2d 976, 979 (2009)).  Plaintiffs have not made such a showing, and the claim must be dismissed on this basis as well.

**Inadequate Allegations of Intent.**  Plaintiffs have not met the requirement to plead that

---

[17] "'[U]nder New York law, punitive damages are not available in the ordinary fraud and deceit case; a plaintiff must plead that defendant's conduct was morally culpable.' A claim for punitive damages is 'available only where [the] defendant acts with evil and reprehensible motives.'"  *Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 198.  "Additionally, where, as here, an action for punitive damages 'has its genesis in the contractual relationship between the parties,' a plaintiff must show that defendant's conduct 'was part of a pattern of behavior aimed at the public generally.'"  *Id.*  Plaintiffs have not alleged such an "evil and reprehensible motive" by BSP, nor have they alleged that BSP's behavior was deliberately aimed at the general public. Thus, Plaintiffs' claim for punitive damages cannot support a duplicative fraud claim.  *See, e.g.*, *id.* at 198 (dismissing the plaintiffs' fraud claim as duplicative of breach of contract claim where "Plaintiffs have neither averred facts of a sufficiently 'evil and reprehensible motive' by [defendant] in this garden-variety commercial fraud, nor alleged behavior deliberately aimed at the general public").  Plaintiffs also seek "emotional and physical damages" as a result of Defendants' allegedly fraudulent conduct.  As Plaintiffs have alleged no physical harm to Ms. Baker as a result of Defendants' alleged conduct, this presumably refers to damages for emotional distress.  However, "damages recoverable for fraud do not include emotional distress." *Carofino v. Forester*, 450 F. Supp. 2d 257, 269 (S.D.N.Y. 2006) (citing *Jeffrey BB v. Cardinal McCloskey Sch. & Home for Children*, 257 A.D.2d 21, 24, 689 N.Y.S.2d 721, 723 (3d Dep't 1999)).  Thus, Plaintiffs also cannot differentiate their claim for fraud from the claim for breach of contract on the basis of special damages, and the claim must be dismissed as duplicative.

BSP intended to induce reliance upon alleged misrepresentations.  Under the theory of the Amended Complaint, Defendants allegedly made repeated misrepresentations to Ms. Baker, but the Complaint does not allege their motive in doing so.  Indeed, BSP had no reason to not make introductions and then lie to Plaintiffs about it.  BSP had every incentive to shop the Project, as its received compensation was contingent on its securing financing.  Moreover, since not pursuing any specific contact was not a breach of the agreement, BSP had no reason to claim it did something it had no obligation to do.  Without any hint of Plaintiffs' theory as to why BSP would have perpetrated this fraud, it cannot adequately defend itself against the allegations.

**No Reasonable Reliance.**  "An essential element of any fraud or negligent misrepresentation claim is that there must be reasonable reliance, to a party's detriment, upon the representations made." *Water St. Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183, 185 796 N.Y.S.2d 598, 599 (1st Dep't 2005) (citing *River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 275, 743 N.Y.S.2d 870, 871 (1st Dep't 2002)).  Here, even taking all of Plaintiffs' allegations in the Amended Complaint as true, Plaintiffs have failed to plead reasonable reliance, to Plaintiffs' detriment, upon BSP's representations.  According to the Amended Complaint, Defendants' misrepresentations related to whether they had sent Plaintiffs' script or pitch package to their contacts and were soliciting talent, investors and sponsors on Plaintiffs' behalf.  Am. Cplt. ¶ 117.  However, the Amended Complaint also (accurately) alleges that the Shopping Agreement Starbreacher entered into with BSP was nonexclusive, and Plaintiffs understood as such.  *See id.* ¶ 60 (nothing in the "bare-bones" Shopping Agreement limited Plaintiffs' "ability to pursue her/their own leads or explore any and all options for potential co-production, distribution or sale of her IP or any viable source for funding and promotion for her movie.").  Plaintiffs did not sit silent in the face of the alleged

misrepresentations.  Rather, Plaintiffs allege that Baker took matters into her own hands, contacting Village Road Show directly about her script.  *Id.* ¶ 61.

No Damage.  Finally, even if Plaintiffs had acted differently based upon reliance on Defendants' representations, Plaintiffs have not shown any damage that could have caused. According to the Amended Complaint, when Matt Skiena at Village Road Show did read Baker's script, he determined that "they didn't think it was right for Village Road Show."  *Id.* ¶¶ 61-62.  This example makes clear that not only did Ms. Baker expressly *not* rely upon Defendants' representations by taking matters into her own hands; she also was not damaged by any alleged failure on the Defendants' part to reach out to these contacts, as Village Road Show ultimately rejected the project.  Additionally, Plaintiffs allege the Parties' relationship ended in the fall of 2012, at which point Ms. Baker also allegedly became aware Defendants allegedly had not circulated her project to their contacts.  *Id.* ¶¶ 81, 123.  Thus, from November 2012 through the present, Ms. Baker has been free to market her project, unencumbered by her relationship with Defendants.  Apparently, Plaintiffs have yet to find interest in the Project.  Even if Plaintiffs allegedly lost a year of pitching the Project during their relationship with BSP, they suffered no damages, and thus a fraud claim cannot be sustained.

### 3.  Plaintiffs' Allegations Do Not Satisfy the Requirements of Federal Rule of Civil Procedure 9(b)

In addition to Rule 12(b)(6)'s plausibility standard, Plaintiffs "must satisfy the heightened pleading standard set forth in Rule 9(b), which reads: In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting Fed. R. Civ. P. 9(b)).  More specifically, Plaintiffs are required to "(1) detail the statements (or

21

omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (quoting *Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). Plaintiffs must also allege facts "that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)). Plaintiffs fail to meet this burden.

Plaintiffs do not detail many of the specific statements they contend were fraudulent, but rather Plaintiffs allege generally that "Defendants represented to Ms. Baker that they had sent at the very least her script and/or pitch package to a plethora of her and their contacts," that they were "following up with" some of these contacts regarding Ms. Baker's pitch materials, and for many of these statements Plaintiffs do not identify the speaker or specify where or when they were made. Am. Cplt. ¶¶ 117-128. Most importantly, Plaintiffs fail to explain why any of Defendants' statements were fraudulent; Plaintiffs merely believed that Defendants were not making appropriate efforts to shop the Project. *See id.*; *see also, e.g., id.* at ¶ 52 (stating that Baker "has never seen anything to prove that her project was ever presented to any of the[] studios, nor to Spielberg, nor to any other studios or contacts, as the Defendants claimed."). Plaintiffs plead no facts giving rise to an inference of fraudulent intent on BSP's part, such as a possible motive for the alleged fraud; rather, as explained above, BSP had every incentive to shop the Project, as its received compensation was contingent on its securing financing. *See Jiaxing Hongyu Knitting Co., Ltd. v. Allison Morgan LLC*, No. 11 Civ. 9342, 2013 WL 81320, at *3 (S.D.N.Y. 2013) (Nathan, J.) (plaintiff's conclusory allegations that "Defendants' representations that they would perform their obligations under the purchase orders 'were false, deceitful, fraudulent, and made in bad faith,'" were insufficient to plead fraud claim, as "facts

alleged in the Complaint suggest only a breach of contract and do not support an inference of scienter, notwithstanding [plaintiff's] conclusory rhetoric and speculation to the contrary.").

### D.    Claim Four Fails to State a Viable Breach of Fiduciary Duty Claim

Baker's claim against BSP for breach of fiduciary duty fails because the parties were not in a fiduciary relationship and no fiduciary duty exists.  Under New York law, which Plaintiffs plead applies to their breach of fiduciary duty claim, Am. Cplt. ¶ 134, and which also governs the agreement upon which the fiduciary relationship is allegedly predicated, Shopping Agreement ¶ 11, a claim for breach of fiduciary duty requires "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 581 (E.D.N.Y. 2014) (internal citation omitted).[18] "'[A] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'"  *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 101 (S.D.N.Y. 2013) (quoting *Krys v. Butt*, 486 F. App'x 153, 154 (2d Cir. 2012)).  In most cases, an arm's-length commercial transaction will not give rise to a fiduciary relationship absent "a higher level of trust."  *Id.*

Although Plaintiffs throw out titles pregnant with trust—partners, agents, licensed talent agents—the "bare-bones" Shopping Agreement uses none of them and creates no such relationship.  The Shopping Agreement merely provided that BSP "may" provide "finder's services" and receive compensation if it decides to "seek" such financing and does it successfully.  As the New York Court of Appeals has recognized, absent some other contractual language establishing a relationship of trust—and the Shopping Agreement is devoid of any—a

---

[18] Ohio law is in accord, requiring "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe that duty; and (3) an injury resulting proximately therefrom."  *Tedder, Trustee of the Roudebush Childrens Trust v. Kotar*, No. 1:18-cv-48, 2019 WL 315097, at *3 (S.D. Ohio Jan. 24, 2019).

23

finder's agreement, like the Shopping Agreement, does not give rise to a fiduciary relationship:

> In these circumstances, a fiduciary relationship does not arise by operation of law, but must spring from the parties themselves, who agree to and accept the responsibilities that flow from such a contractual fiduciary bond. Courts look to the parties' agreements to discover, not generate, the nexus of relationship and the particular contractual expression establishing the parties' interdependency. Finders have a recognized role in the law and perform a fairly customary market service. Unless the particular agreement establishes a relationship of trust, one will not spring from a finder's contract in and of itself, for without some agreed-to nexus, there is no relationship of trust and, thus, no duty of highest loyalty. Rather, absent special agreement or special circumstances, the forces and mores of the marketplace govern such finder arrangements.

*Ne. Gen. Corp. v. Wellington Advert., Inc.*, 82 N.Y.2d 158, 160, 624 N.E.2d 129, 130 (1993).

Here, where "the parties find themselves or place themselves in the milieu of the 'workaday' mundane marketplace, and if they do not create their own relationship of higher trust," as the Court of Appeal instructs, this "[C]ourt[] should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." *Ne. Gen. Corp.*, 624 N.E.2d at 131.[19]

## E.    Claim Five Fails to State a Claim for IIED

The single alleged act within the one year limitations period Baker cites in support of her IIED claim—the alleged 2018 email containing "spy or malware"—fails to meet the incredibly stringent standard for an IIED claim. Plaintiffs asserting IIED claims under Ohio or New York law—both of which are based on the same Restatement provision—must show that: "(1) the defendant intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Monak v. Ford Motor Co.*, 95 F. App'x 758, 762

---

[19] Plaintiffs' Breach of Fiduciary Duty claim contains an allegation that "BenSalz acted intentionally and recklessly" when Skouras allegedly acted a certain way towards Baker. Am. Cplt. ¶ 137/46. Not surprisingly, Plaintiffs do not cite any purported fiduciary duty BSP breached, and there is no basis for holding BSP to be a fiduciary responsible for such conduct.

(6th Cir. Apr. 5, 2004) (citing *Thatcher v. Goodwill Indus. of Akron,* 690 N.E.2d 1320, 1331 (Ohio Ct. App. 1997)); *see also Pyle v. Pyle,* 463 N.E.2d 98, 103 (Ohio Ct. App. 1983); *accord Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (citing same requirements under New York law).

As the Sixth Circuit noted "[w]hen it recognized the tort of intentional infliction of emotional distress in *Yeager,* the Ohio Supreme Court looked to the Restatement (Second) of Torts," *Monak*, 95 F. App'x at 763, which is also applied in New York:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Yeager*, 453 N.E.2d at 671 (quoting Restatement (Second) of Torts § 46 cmt. d (1965) (cited in *Monak*, 95 F. App'x at 763)).  "This is a high standard." *Monak*, 95 F. App'x at 763.  Indeed, New York's highest court has characterized the Restatement's IIED requirements as "rigorous, and difficult to satisfy"; and every IIED claim New York's Court of Appeals has considered "failed" "because the alleged conduct was not sufficiently outrageous." *Howell*, 612 N.E.2d at 702 (internal citations omitted).  "As a matter of law, the conduct must be more than mere 'insults, indignities, threats, annoyances, petty aggressions, or other trivialities.'" *Monak*, 95 F. App'x at 763 (quoting *Mason v. United States Fid. & Guar. Co.*, 590 N.E.2d 799, 804 (Ohio Ct. App. 1990) (quoting Restatement (Second) of Torts § 46 cmt. d))).  The 2018 alleged act of sending malware by email—which BSP denies—falls well short of the "outrageous" standard called for under Ohio and New York law.  Therefore, the 2018 IIED claim fails on the merits.

F.     **Claim Six Fails to Set Forth a Claim for Civil Conspiracy**

New York law, which should apply in this case, does not recognize civil conspiracy as a cause of action, *Project Cricket Acquisition, Inc. v. FCP Inv'rs VI, L.P.*, 159 A.D. 3d 600, 601, 74 N.Y.S.3d 517, 519 (1st Dep't 2018) (citing *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 85 A.D. 3d 457, 458, 924 N.Y.S.2d 376 (1st Dep't 2011)), and, accordingly, Plaintiffs' claim should be dismissed, as virtually all, if not all, conduct by BSP occurred in New York, not Ohio.

To the extent that Ohio law applies, although Ohio recognizes such a claim, Plaintiffs fail to assert a viable one.  To state a claim for civil conspiracy under Ohio law, a plaintiff must plead: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Shoemaker v. Murdock*, No. 18-cv-564, 2019 WL 358920, at *6 (S.D. Ohio Jan. 29, 2019) (citing *Aetna Cas & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (quoting *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)).  Such a civil conspiracy claim "must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Shoemaker*, 2019 WL 358920, at *6 (quoting *Spears v. Chrysler, LLC*, No. 3:08 CV 331, 2011 WL 540284, at *11 (S.D. Ohio Feb. 8, 2011)).  As set forth herein, Plaintiffs have failed to plead a viable unlawful act independent of the alleged civil conspiracy and therefore their civil conspiracy claim fails as a matter of law and must be dismissed.  *Id.* at *6 (dismissing civil conspiracy claim where two underlying counts were dismissed).

### G.    Claim Seven Fails to Set Forth a Viable Claim for Tortious Interference

Plaintiffs' seventh cause of action for both tortious interference with contract and with prospective economic relations, Am. Cplt. ¶¶ 143-145/53-55, fails to state a claim upon which relief can be granted because it completely fails to apprise BSP of the nature—and even the

existence—of anything BSP did vis a vis third parties to unlawfully intervene.  Instead, Plaintiffs

allege "upon information and belief" that BSP knew about some unspecified, mysterious

contacts and existing relations.  Am. Cplt. ¶ 143/53-54.  Continuing on "information and belief,"

Plaintiffs then assert in conclusory fashion that "Defendants unlawfully and maliciously

interfered with Ms. Baker's business contracts and relationships to disrupt them and cause her

economic harm, and that they wantonly sought to interfere with her prospects and relationships"

with unidentified entities.  Am. Cplt. ¶ 143/54.  Again, not a word about whom Defendants

interfered with, and how they interfered with them, an omission that is all the more outrageous

because Plaintiffs—while pleading on information and belief—somehow are knowledgeable

enough about the conduct to characterize it as "unlawful," "malicious," and "wanton."

Completing the "claim," Plaintiffs then "reason" that because they have failed to close

deals with anyone, including Acrylic Tank Manufacturing ("ATM") and Sea World—despite the

fact that they make no allegation of any actual interference by BSP—there must have been some

interference or else they would have gotten the deal.  *Id.* ¶¶ 143-144/53-55.  Federal Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007));

*see also Hall v. Cent. Ohio Elderly Care, LLC*, No. 2:16-cv-01102, 2017 WL 4250522, at *3

(S.D. Ohio Sept. 21, 2017) (citing *Gross v. Nationwide Credit, Inc.*, No. l:10-CV-00738, 2011

WL 379167, at *3 (S.D. Ohio Feb. 2, 2011)) (complaint did not point to any particular customers

or patients with whom defendant interfered that would provide plaintiff with '"sufficient notice .

. . of the nature of the [defendants'] claims'"); *Plasticware, LLC v. Flint Hill Res., LP*, 852 F.

Supp. 2d 398, 402-03 (S.D.N.Y. 2012) (collecting cases for proposition that tortious interference

claim fails where "[p]laintiff has not adequately alleged *specific* business relationships with

27

which Defendant allegedly interfered").

### H.    Plaintiffs Fail to State a Claim under the N.Y.C. Administrative Code

Plaintiffs' Amended Claim Eight against BSP adds a previously unpled but still undefined gender-based claim under the New York City Administrative Code ("N.Y.C. Code"). Plaintiff cites a "GMVA" and "N.Y.C. Code §8-101," Am. Cplt. ¶ 146/55, but Plaintiffs assert no viable claim under those provisions or any other part of the N.Y.C. Code.

To the extent that that Plaintiff Baker asserts a claim for gender-based discrimination under Article Eight of the N.Y.C. Code, the claim is barred because section 8-107 of the N.Y.C. Code makes gender-based discriminatory practices unlawful in employment, housing, accommodations and other settings not applicable here.  No employment or other covered type of relationship is or could be alleged.  Baker simply has no gender-based discrimination claim.

If Baker intends to assert a claim under the N.Y.C. Code's Victims of Gender-Motivated Violence Protection Act, N.Y.C. Code §§ 8-901 *et seq.* ("GMVA"), that claim also fails.  *First*, the GMVA provides a right of action only for "*any person claiming to be injured.*"  N.Y.C. Code § 8-904, redesignated as § 10-1104 on Oct. 16, 2018 (emphasis supplied).  Thus, only Baker could have a claim, not the Corporate Plaintiffs.

*Second*, on its face, the GMVA authorizes only a cause of action "against such individual" alleged to have committed a violent, gender-motivated crime.  N.Y.C. Code § 8-904 ("[A]ny person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action *against such individual*" (emphasis added)).  Thus, BSP—an LLC, not "an individual," and certainly not the individual alleged to have committed the act—"cannot be liable under §8-904 because the statute, on its face, is limited claims against the "individual" who committed the act

complained of, and Claim Eight against BSP should be dismissed.  *Gottwald v. Sebert*, No. 653118/2014, 2016 WL 1365969, at *4, *9 (N.Y. Sup. Ct. April 6, 2016)  (dismissing GMVA claim against corporate entities controlled by individual).

*Third*, Baker fails to allege the required "violent" conduct or conduct that "presents a serious risk of physical injury."  The GMVA is a hate crime statute.  It covers only a "crime of violence motivated by gender as defined in [N.Y.C. Code] section 8–903."  N.Y.C. Code § 8–904, redesignated as § 10-1104 on Oct. 16, 2018.  Section 8–903, redesignated as § 10-1103 on Oct. 16, 2018, in turn, defines a "crime of violence" as an "act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law . . . if the conduct presents *a serious risk of physical injury to another*, whether or not those acts have actually resulted in criminal charges."  N.Y.C. Code § 10-1103.  Here, the alleged conduct was neither violent nor  "presenting a serious risk of physical injury."  *See* Am. Cplt. ¶¶ 75, 148/56, 148/57.  Accordingly, Baker's claim fails.

*Fourth*, N.Y.C. Code  § 10-1103 requires motivation based on animus towards the victim's gender, *see* § 10-1103, and Baker alleges no facts supporting that.  Failure to allege facts showing such animus requires dismissal.  *See Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429 (S.D.N.Y. 2018) (finding no gender hostility even where defendant allegedly raped and assaulted plaintiff).[20]  Here, Baker alleges acts—which BSP vehemently

---

[20] Cases assessing the pleading standard for § 10-1103 tellingly involve claims of rape and violent assault, and/or explicit expressions of gender-based animus, unlike Plaintiffs' allegations here.  *See, e.g.*, *Gottwald*, 2016 WL 1365969, at *4,*9 (finding failure to allege gender animus when defendant repeatedly drugged and raped plaintiff, made negative comments about plaintiff's body, and threatened to destroy plaintiff's career); *Adams v. Jenkins*, No. 115745/03, 2005 WL 6584554, at *1, *4 (N.Y. Sup. Ct. April 22, 2005) (no animus even where defendant slapped and pushed plaintiff, called her a "bitch," and threatened to kill her); *Breest v. Haggis*, 115 N.Y.S.3d 322, 180 A.D.3d 83, 88 (N.Y. App. Div. 2019) (defendant conceded that "the alleged rape and sexual assault are sufficient to allege crimes of violence" where defendant

denies—that, *as she terms it*, reflect alleged "sexual advances," Am. Cplt. ¶¶ 72-73, 148/57,

which on their face do not reflect gender animus.  The Amended Complaint also states that it was

"Ms. Baker's impression" that Mr. Skouras's alleged "press[ing] himself up against [her] from

behind and touching her inappropriately" in an elevator "could not have been by accident."  *Id.* ¶

75.  That Mr. Skouras's alleged action could have been construed as accidental contact reveals

that it is not the type of action that inherently reflects gender-based animus.

## **CONCLUSION**

For these reasons, Defendant Bensalz Productions LLC's Motion to Dismiss should be

granted, without leave to amend based on futility, and BSP should be awarded such other and

further relief as is appropriate.

Dated:  June 26, 2020
         New York, New York                     Respectfully submitted,

_____
Mark H. Moore
Elizabeth V. Stork
REAVIS PAGE JUMP LLP
41 Madison Avenue, 41st Floor
New York, NY 10010
Phone: (212) 763-4100
Fax: (212) 763-4141
mmoore@rpjlaw.com
estork@rpjlaw.com

*Counsel for Defendant Bensalz Productions LLC*

---

"forced plaintiff to give him oral sex; . . . digitally penetrated her," and "raped her"); *see id.*
(Tom, J.P. concurring) ("defendant's alleged satisfaction in inducing fear in plaintiff and his
threatening accusation that she had, in effect, invited his sexual aggression, amply support[ed]"
showing of gender-based animus).